UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ESSO EXPLORATION AND PRODUCTION          :
CHAD, INC.,                                                           06 CV 4401 (RMB)
                                                             :
              Plaintiff,
                                                             :
              --against--
                                                             :
TAYLORS INTERNATIONAL SERVICES LTD.,
                                                             :
              Defendant.
                                                             :
-------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW
### IN OPPOSITION TO MOTION TO CONFIRM ARBITRATION AWARD
### AND IN SUPPORT OF CROSS-MOTION TO VACATE

OF COUNSEL:

Ronald C. Minkoff (RM-2943)
Cameron A. Myler (CM-7942)
FRANKFURT KURNIT KLEIN & SELZ, PC
488 Madison Avenue
New York, New York 10022
Tel. (212) 980-0120
Fax (212) 593-9175

Teresa R. Peacocke
**(not yet admitted)**
3 Stone Buildings New York
10 Rockefeller Plaza, 16th Floor
New York, New York 10020

Dated: New York, New York
       June 22, 2006

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

FACTS ................................................................................................................... 4

ARGUMENT ......................................................................................................... 4

I    THE ARBITRATOR'S AWARD MAY NOT BE CONFIRMED BECAUSE IT
     IS NOT "FINAL AND DEFINITE" ................................................................ 4

      A.    The Award to Esso Chad for Damages Relating to the Chadian
           Judgments Is Not
           Final and Definite ................................................................................ 5

      B.    The Portion of the Award Providing a Declaration with respect to
           any Future Judgment in Favor of Senev-Tchad is Not Final and
           Definite ................................................................................................. 6

II   EVEN IF THE AWARD IS FINAL, THE COURT SHOULD APPLY A *DE
     NOVO* STANDARD OF REVIEW ................................................................ 7

      A.    The Arbitrator Exceeded his Authority under the Federal
           Arbitration Act, 9 U.S.C. § 10(a)(4) ................................................... 7

      B.    This Court Should Apply a De Novo Standard of Review Pursuant
           to the Parties' Agreement .................................................................... 9

      C.    In the Alternative, this Court Should Apply a  Modified "Manifest
           Disregard" Standard of Review .......................................................... 12

III  THE ARBITRATOR EXCEEDED HIS POWERS BY AWARDING ESSO
     CHAD DAMAGES PROHIBITED BY THE CATERING CONTRACT ...................... 12

      A.    The Claims Are Barred by Section 13.7 ............................................... 13

      B.    Section 5.4 Bars Any Award of Consequential Damages. ..................... 14

            1.    The Award of $2,973,426.00 to Esso Chad for the Chadian
                 Judgments Constitutes Consequential Damages and Should
                 Be Vacated ................................................................................ 17

            2.    The Award of $198,962.00 to Esso Chad for Overdraft
                 Charges Constitutes Consequential Damages and Should
                 Be Vacated ................................................................................ 18

i

3.     The Award of $731,389.00 to Esso Chad for Attorneys' Fees Should Be Vacated ................................................................... 19

4.     The Award of $126,748.00 to Esso Chad for "Other Costs and Expenses" Constitutes Consequential Damages and Should Be Vacated........................................................................ 20

5.     Alternatively, The Arbitrator's Award Of Damages To Esso Chad For Expenses Relating To The Chadian Court Judgments Is A Manifest Disregard Of New York Law And Should Be Vacated........................................................................ 20

IV     THE ARBITRATOR IGNORED NEW YORK LAW IN RULING THAT TAYLORS HAD FAILED TO ESTABLISH ITS CONVERSION CLAIM................... 21

     A.     Taylors Did Not Need to Demand Return of the Komé Camp Assets ............................................................................................ 21

     B.     Taylors Satisfied Any Demand Requirement ........................................... 23

     C.     Taylors Did Not Authorize the Transfer of the Assets ............................. 24

CONCLUSION.................................................................................................................... 26

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.I. Trade Finance, Inc. v. Centro Internationale Handelsbank A.G.*,
 926 F. Supp. 378 (S.D.N.Y. 1996) ..............................................................19

*American Electric Power Co. v. Westinghouse Electric Corp.*,
 418 F. Supp. at 435 (S.D.N.Y. 1976)..........................................................16

*Americas Insurance Co. v. Seagull Compania Naviera, S.A.*,
 774 F.2d 64 (2d Cir. 1985)...........................................................................5

*In re Arbitration between Coopertex Inc.*,
 1990 U.S. Dist. LEXIS 578 (S.D.N.Y. Jan. 19, 1990)...................................6

*Banco de Seguros del Estado v. Mutual Marine Office, Inc.*,
 344 F.3d 255 (2d Cir. 2003)........................................................................20

*Barbier v. Shearson Lehman Hutton Inc.*,
 948 F.2d 117 (2d Cir. 1991)..........................................................................7

*Bowen v. Amoco Pipeline Co.*,
 254 F.3d 925 (10th Cir. 2001) .....................................................................11

*Chemical Bank v. Social Brand Industrial, Inc.*,
 624 F. Supp. 979 (S.D.N.Y. 1985) .........................................................22, 24

*Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*,
 935 F.2d 1501 (7th Cir. 1991) .....................................................................11

*Cofinco, Inc. v. Bakrie & Brothers, N.V.*,
 395 F. Supp. 613 (S.D.N.Y. 1975) ................................................................7

*DiRussa v. Dean Witter Reynolds Inc.*,
 121 F.3d 818 (2d Cir. 1997).........................................................................12

*Ebasco Serv., Inc. v. Pennsylvania Power & Light Co.*,
 460 F. Supp. 163 (E.D.Pa. 1978) ................................................................16

*Fils et Cables D'Acier de Lens v. Midland Metals Corp.*,
 584 F. Supp. 240 (S.D.N.Y. 1984) ..............................................................11

*First Options of Chicago, Inc. v. Kaplan*,
 514 U.S. 938 (1995)........................................................................................9

*Gateway Tech., Inc. v. MCI Telecomm. Corp.*,
  64 F.3d 993 (5th Cir. 1995) .......................................................................9, 10, 11, 12

*Halligan v. Piper Jaffray, Inc.*,
  148 F.3d 197 (2d Cir. 1998).................................................................................12, 21

*Indu Craft, Inc. v. Bank of Baroda*,
  47 F.3d 490 (2d Cir. 1995).............................................................................................6

*Kyocera Corp. v. Prudential-Bache T Services, Inc.*,
  341 F.3d 987 (9th Cir. 2003) ......................................................................................11

*Leveraged Leasing Admin. Corp. v. Pacificorp Capital, Inc.*,
  87 F.3d 44 (2d Cir. 1996)............................................................................................23

*New England Utility v. Hydro-Quebec*,
  10 F. Supp. 2d 53 (D. Mass. 1998) ...........................................................................11

*Olympia & York Fla. Equity Corp. v Gould*,
  776 F.2d 42 (2d Cir. 1985).............................................................................................6

*Ottley v. Schwartzberg*,
  819 F.2d 373 (2d Cir. 1987), *cert. denied*, 488 U.S. 944 (1988)................................13

*Petroleo Brasileiro, S. A., Petrobras v. Ameropan Oil Corp.*,
  372 F. Supp. 503 (E.D.N.Y. 1974) ............................................................................16

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
  388 U.S. 395 (1967)........................................................................................................9

*Roadway Package System, Inc. v. Kayser*,
  257 F.3d 287 (3d Cir. 2001)....................................................................................9, 10

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*,
  157 F.3d 174 (2d Cir. 1998)...........................................................................................4

*Roneker v. Kenworth Truck Co.*,
  977 F. Supp. 237 (W.D.N.Y. 1997) ...........................................................................16

*Schonfeld v. Hilliard*,
  218 F.3d 164 (2d Cir. 2000)...........................................................................15, 16, 18

*Spier v. Calzaturificio Tecnica, S.P.A.*,
  71 F. Supp. 2d 279 (S.D.N.Y. 1999).............................................................................2

*Stratton Oakmont, Inc. v. Nicholson,*
    868 F. Supp. 486 (E.D.N.Y. 1994) ............................................................8

*UHC Management Co. v. Computer Sciences Corp.,*
    148 F.3d 992 (8th Cir. 1998) ....................................................................11

*Vitol Trading S.A., v. SGS Control Services, Inc.,*
    874 F.2d 76 (2d Cir. 1989)........................................................................15

*Volt Information Sci. v. Board of Trustees,*
    489 U.S. 468 (1989).........................................................................9, 10, 11

*Western Employers Insurance Co. v. Jefferies & Co.,*
    958 F.2d 258 (9th Cir. 1992) .....................................................................8

*Yusuf Ahmed Alghanin & Sons, Inc. v. Toys "R" Us,*
    126 F.3d 15 (2d Cir. 1997).........................................................................2

## STATE CASES

*American List Corp. v. U.S. News & World Report, Inc.,*
    75 N.Y.2d 38, 550 N.Y.S.2d 590 (1989) ................................................15

*Banco Central de Paraguay v. Paraguay Humanitarian Foundation, Inc.,*
    No. 01CIV9649, 2005 WL. 53271 (S.D.N.Y. Jan. 7, 2005)......................23

*Bibeau v. Ward,*
    228 A.D.2d 943, 645 N.Y.S.2d 107 (App. Div. 1996) .............................17

*Burrowes v. Combs,*
    25 A.D.3d. 370, 808 N.Y.S.2d 50 (App. Div. 2006) ...............................25

*Fleet Capital Corp. v. Yamaha Motor Corp.,*
    No. 01 Civ. 1047, 2002 WL. 31174470 (S.D.N.Y. Sept. 26, 2002)...........24

*Schanbarger v. Dott's Garage,*
    61 A.D.2d 43, 402 N.Y.S.2d 72 (App. Div. 1978) ..................................22

*Scott v. Palermo,*
    233 A.D.2d 869, 649 N.Y.S.2d 289 (App. Div. 1996) .............................16

*State of New York v. Seventh Regiment Fund, Inc.,*
    98 N.Y.2d 249, 746 N.Y.S.2d 637 (2002) .......................................21, 22, 23

*Syncor International Corp. v. McLeland,*
    No. 99- 2261, 1997 WL. 452245 (4th Cir. Aug. 11, 1997) ......................10

*Vigilant Insurance Co. of America v. Housing Authority of City of El Paso, Tex.,*
87 N.Y.2d 36, 637 N.Y.S.2d 342 (1995) ...................................................................21

## FEDERAL STATUTES

9 U.S.C. § 10(a)(4) ..............................................................................2, 3, 4, 7, 8, 12

Convention on the Recognition and Enforcement of Foreign Arbitral Awards
[9 U.S.C. §§ 201-208].........................................................................................2

9 U.S.C. §§ 10-11 ......................................................................................2, 9

## MISCELLANEOUS

Tom Cullinan, *"Contracting for an Expanded Scope of Judicial Review in
Arbitration Agreements,"* 51 Vand. L. Rev. 395, 426 (March 1998) ............................9

Martin Domke, *"Commercial Arbitration* §39:15 (3d ed. 2003).........................................9

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION
TO CONFIRM ARBITRATION AWARD AND IN SUPPORT OF CROSS-MOTION TO
VACATE**

Respondent, Taylors International Services, Ltd. ("Taylors"), respectfully submits this

Memorandum of Law: (i) in opposition to the motion by Esso Exploration and Production Chad,

Inc. ("Esso Chad") to confirm an Award dated March 28, 2006 (the "Award") entered in an

International Chamber of Commerce arbitration (the "Arbitration") that requires Taylors to pay

to Esso Chad $3,113,884.86 in net damages, $590,588.31 in attorneys fees and legal costs, and

$32,500 in arbitration costs;, together with pre-award and post-award interest[1] and (ii) in support

of Taylors' Cross-Motion to vacate the Award.

## I N T R O D U C T I O N

On October 1, 2001, Esso Chad entered into a written agreement with Taylors (the

"Catering Contract") to provide catering and general camp services in connection with the

development of oilfields in southern Chad. Award ¶ 3; Catering Contract § 1 (Peacocke Decl.,

Exs. 1 and 2). *Id.* On December 19, 2003, after various difficulties between Taylors and Esso

Chad had resulted in delays in payments to subcontractors (mainly Chadian food and labor

suppliers), Esso Chad terminated the Catering Contract by expressly invoking a provision in the

Contract that precluded Esso Chad from recovering damages arising from such termination.

Award, ¶ 4. After Esso Chad seized all of Taylors' assets in Chad, and refused to make payment

on invoices for labor and supply costs incurred before termination, Taylors commenced the

arbitration in New York. The subcontractor, meanwhile, successfully sued Esso Chad in Chad,

based mainly on Esso Chad's post-termination conduct (the "Chadian Judgments").

---

[1] Esso Chad's motion was recently transferred to this Court from the U.S. District Court for the
Southern District of Texas pursuant to an Order from that Court dated June 1, 2006. *See*
Declaration of Teresa Peacocke in Support of Cross-Petition dated June 21, 2006 ("Peacocke
Decl."), Ex. _.

After six days of hearings, the Arbitrator issued the Award. Although he determined that Esso Chad had failed to pay Taylors almost $2 million on legitimate invoices, he rejected Taylors' conversion claim, offset certain monies Esso Chad had paid to cover Taylors' payroll, and awarded Esso Chad more than $4 million (including overdraft charges and Chadian legal fees) as reimbursement of the amounts it had paid on the Chadian Judgments, *even though those Judgments are on appeal, and the appeal may be successful. Id.* ¶¶ 45, 48. The net award against Taylors, which also included costs, expenses and attorneys fees, was $3,734,972.77, plus interest. Award, pp. 20-21. In addition, the Arbitrator declared that Taylors would be required to reimburse Esso Chad for any monies a Chadian court found it owed another former subcontractor, Senev-Tchad, although court proceedings involving Senev-Tchad have not yet begun. Award, ¶ 55.

Esso Chad now seeks confirmation of the Award.[2] This should be denied, and the Award should be vacated.

*First,* the Arbitrator acted improperly by designating the Award as "final," and therefore exceeded his powers under 9 U.S.C. § 10(a)(4). Because the Chadian judgments are still on appeal, because Esso Chad's lawyer testified that the appeal "[has] all reasons to be successful" [Arb. Tr. at 861 (Peacocke Decl. Ex. 7)], and because Esso Chad will be entitled to reimbursement of amounts previously paid to subcontractors if it prevails, Esso Chad's damages cannot be ascertained at this time. Moreover, the portion of the Award declaring that Taylors

---

[2]    Whether or not the Award falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards [9 U.S.C. §§ 201-208], the standards for vacatur under the Federal Arbitration Act ("FAA") (9 U.S.C. §§ 10-11) still apply. *Yusuf Ahmed Alghanin & Sons, Inc. v. Toys "R" Us,* 126 F.3d 15, 23 (2d Cir. 1997); *see Spier v. Calzaturificio Tecnica, S.P.A.,* 71 F.Supp.2d 279, 285 (S.D.N.Y. 1999) ("the principles of domestic American law for *refusing to enforce* an award apply, notwithstanding the fact that a petition to *enforce* the award falls under the Convention"). (emphasis in original).

must pay to Esso Chad whatever amount a court ultimately awards Senev-Tchad is not "final" since it may not be converted into a court judgment.

*Second,* the Catering Contract contains a very unusual and restrictive arbitration clause. Under that clause, the Arbitrator was required to "*apply the laws of the State of New York . . . and . . . decide in accordance with the terms of the Agreement. . . .*" Catering Contract § 18.01 (emphasis added). These strict terms require this Court to use a *de novo* standard of review. The Arbitrator exceeded his powers under 9 U.S.C. § 10(a)(4) by entering an Award that failed to adhere strictly to the terms of the Catering Contract and basic principles of New York law:

- Although Section 5.4 of the Catering Contract prohibits awarding Esso Chad "any consequential or indirect damages," and Section 13.7 bars "any claim . . . against [Taylors] for . . . damages" arising from a termination based on insolvency under Section 13.4, the Arbitrator ignored both provisions when he granted Esso Chad reimbursement for monies paid to the third-party subcontractors following Taylors' alleged breach, as well as attachment costs, legal fees spent defending the Chadian claims, and other items that cannot be classified as direct contract damages; and

- The Arbitrator imposed a strict "demand and refusal" requirement on Taylors' conversion claim that does not exist under New York law – particularly where, as here, Esso Chad acknowledged it did not own the assets it had seized from Taylors, and agreed (before reneging) that it would pay Taylors for those assets.

Indeed, the Arbitrator's interpretation of New York law on both these points was so off-base as to satisfy the "manifest disregard" standard, whether this Court uses the traditional formulation of that standard or, as it should, modifies the standard to reflect the highly restrictive terms of the Arbitration Agreement.

## FACTS

The facts are fully set forth in the Declaration of Teresa Rosen Peacocke. We will not repeat them here.

## ARGUMENT

### I

### THE ARBITRATOR'S AWARD MAY NOT BE CONFIRMED BECAUSE IT IS NOT "FINAL AND DEFINITE"

Where, as here, an arbitrator has so imperfectly executed his powers that a "final and definite" award is not made, the court should not confirm the award and should vacate it pursuant to Section 10(a)(4) of the Federal Arbitration Act [9 U.S.C. § 10(a)(4)] until a final, ascertainable award is rendered. An award is deemed final and definite if it resolves the issues submitted to arbitration "definitely enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998).

That is not the case here. The bulk of the Award favoring Esso Chad covers payments made on Chadian court judgments that former subcontractors obtained against Esso Chad – judgments "which are subject to appeal and there is a good chance that the appeals will succeed." Award ¶¶ 45, 48. Another portion of the Award is a "declaration in respect of any amount which [Esso Chad] may be required to pay to Senev-Tchad pursuant to [any] future court order," though no such order is in place as yet and, apparently, no judicial proceedings have even begun. *Id.* ¶ 50. Because further adjudication is required to resolve both the Chadian Judgments and the claims asserted by Senev-Tchad against Esso Chad, the Award may not be confirmed at this time, and must be vacated pending the entry of a more final award.

A.    **The Award to Esso Chad for Damages Relating to the Chadian Judgments Is Not Final and Definite**

The $2,973,426 award of damages to Esso Chad for the Chadian Judgments, as well as for expenses and costs relating to the enforcement of those Judgments (including the cost of garnishment) is neither final nor definite, and therefore should be vacated. The Award is based on two decisions of the Court of N'Djamena in Chad, both of which Esso Chad has appealed. Award ¶ 45. As the Arbitrator recognized [*see id.*], the litigation process in Chad is not yet complete and the exact amount that Esso Chad ultimately will have paid to various subcontractors is still unknown. This, in turn, makes it impossible for this Court to enter a definite, final judgment. *Americas Ins. Co. v. Seagull Compania Naviera, S.A.* 774 F.2d 64 (2d Cir. 1985) (holding that court should not attempt to enforce an award that is ambiguous or indefinite, but should instead remand to the arbitrators so that the court will know exactly what it is being asked to enforce).

The Arbitrator tried to circumvent this obvious problem by stating that, even if an appeal is successful, "the reality is that . . . it will be *almost* impossible to recover the amounts paid by Esso Chad, which have been distributed to the various suppliers." Award ¶ 45 (emphasis added). There are two problems with this ruling.

*First*, the record does not support it. The witness whose testimony the Arbitrator cited, Barthelemy Cousin, a French lawyer representing Esso Chad in the Chadian proceedings, was not even certain that the money, initially paid into the Chadian court, had been distributed to the suppliers. Arb. Tr. at 859 (Peacocke Decl. Ex. 7). (emphasis added). And while he claimed that recovering the money "is going to be an extremely difficult job," he did not call it "impossible" or "almost impossible," and noted that only one of the many suppliers involved "is no longer in business." *Id.* at 875; Peacocke Decl. ¶ 74 (listing suppliers).

*Second,* the ruling is speculative and underscores how unsettled the legal situation in Chad is. The Arbitrator appears to concede that Esso Chad has the right to seek recovery from the subcontractors if it obtains a reversal on appeal, and if it does so it will get to keep the amount it recovers as well as the proceeds of the judgment against Taylors. Award ¶ 45. This will allow Esso Chad to double-dip. No provision of the contract or principle of New York law supports such an over-recovery; indeed, the law is directly the opposite. *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995) (damages for breach of contract are aimed at placing the non-breaching party in the same position it would have been in absent the breach, not in a better position). Under these circumstances, any damages award against Taylor was premature, and the Arbitrator erred by designating the Award "final."

**B.    The Portion of the Award Providing a Declaration with respect to any Future Judgment in Favor of Senev-Tchad is Not Final and Definite**

The Arbitrator's decision that "Taylors shall indemnify Esso Chad in respect of any sums which Esso Chad is obliged to pay to Senev-Tchad, pursuant to the order of a competent court, in respect of payments which Taylors is obliged to make under Section 6.1 of Exhibit A[3] of the Catering Contract" (Award, ¶ 55; p. 21 ¶ (ii)) is not "definite and final" as required by the FAA and therefore may not be confirmed. *See Olympia & York Fla. Equity Corp. v Gould* 776 F.2d 42, 45 (2d Cir. 1985) (finding arbitration award that was ambiguous and did not constitute "a mutual, final, and definite award upon the subject matter submitted" must be vacated under § 10(a)(4) of the Federal Arbitration Act (9 U.S.C.A. § 10(a)(4)); *In re Arbitration between Coopertex Inc.* 1990 US Dist LEXIS 578 (S.D.N.Y. Jan. 19, 1990) (vacating arbitration award

---

[3] Exhibit A, Section 6.1 to the Catering Contract states that "[Taylors] shall supply and assign to the Work all personnel required, including but not limited to, recruitment and selection, payment, travel to and from the site, training and development, supervision, discipline and hold [Esso Chad] harmless against any litigation how so ever [sic] caused."

that failed to specify the amount of costs buyer was obligated to pay); *Cofinco, Inc. v. Bakrie & Bros., N.V.*, 395 F. Supp. 613, 616 (S.D.N.Y. 1975) ("It is not sufficient to leave open matters like 'accrued expenses,' interest, and the like, which could entail large sums and disagreements confided to the arbitral jurisdiction").

Here, the Arbitrator first determined that "Esso Chad has failed to prove that it has suffered any damage in respect of the Senev-Tchad claim, and ... reject[ed] [Esso Chad's] claim in damages in this respect." Award, ¶ 50. However, the Arbitrator then went on to "grant [to Esso Chad] a declaration in respect of any amount which it may be required to pay to Senev-Tchad pursuant to court order." *Id.* Not only does the Award fail to specify the amount Taylors must pay Esso Chad, it requires Senev-Tchad's claim to be adjudicated by a Chadian court. It is simply impossible for this Court, at this time, to turn this portion of the Award into a legally enforceable judgment against Taylors. This portion of the Award, therefore, does not meet the degree of finality required by the FAA and may not be confirmed pending the adjudication of the Senev-Tchad claim.

## II
## EVEN IF THE AWARD IS FINAL, THE COURT SHOULD APPLY A *DE NOVO* STANDARD OF REVIEW

**A.    The Arbitrator Exceeded his Authority under the Federal Arbitration Act, 9 U.S.C. § 10(a)(4)**

This Court should vacate the Award on the ground that the Arbitrator exceeded his authority by failing to apply New York law and adhere to the terms of the Catering Contract, as the Arbitration Clause specifically required him to do. *See* 9 U.S.C. § 10(a)(4).

Virtually identical is *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 122 (2d Cir. 1991). In that case, which involved a general New York choice of law provision, the Second Circuit ruled that New York substantive law prohibited the imposition of punitive damages under

the relevant facts. Because the arbitration panel ignored this prohibition and imposed such

damages, the Court held, the panel "exceeded [its] powers," and that portion of the award had to

be vacated pursuant to 9 U.S.C. § 10(a)(4). The Court explained that "[s]ince the arbitrators

were not entitled to award punitive damages due to the choice-of-law provision in the parties'

Agreement, it is manifest that the Panel exceeded its authority in awarding punitive damages.

That portion of the award should have been vacated by the district court. . . ." *Id.* at 122. The

Eastern District of New York made the same ruling in *Stratton Oakmont, Inc. v. Nicholson*, 868

F. Supp. 486 (E.D.N.Y. 1994), on similar facts. *Id.* at 488-89 (arbitrators exceeded their

authority by awarding punitive damages where the agreement contained a New York choice of

law provision).

      Here, the Arbitration Clause in the agreement between the parties expressly states that

"[i]n determining the substance of such controversy or claim, the arbitrator(s) *shall apply the*

*laws of the State of New York*, except for any rule of such laws which would make the law of any

other jurisdiction applicable, *and shall decide in accordance with the terms of this Agreement,*

taking into account the usage of trade applicable to the transaction." Catering Contract, § 18.1

(emphasis added) (Peacocke Decl. Ex. 2). By entering into this strict Agreement, the parties

contracted to limit the Arbitrator's authority in accordance with the Agreement's terms. The

Arbitrator's failure to abide by those terms is grounds for vacating an arbitration award under the

FAA, 9 U.S.C. §§ 10(a)(4) and 10(d). *See Western Employers Ins. Co. v. Jefferies & Co.*, 958

F.2d 258, 262 (9th Cir. 1992) ("arbitrators can also 'exceed their powers' under 9 U.S.C. § 10(d)

when they fail to meet *their* obligations, as specified in a given contract, to the parties")

(emphasis in original) (vacating award).

**B.    This Court Should Apply a De Novo Standard of Review Pursuant to the Parties' Agreement**

Even if 9 U.S.C. §10(a)(4) is somehow deemed inapplicable, this Court should still enforce the parties' arbitration agreement and review the arbitration award at issue under a *de novo* standard of review.

While the district court's review of an arbitration award in the context of a proceeding to confirm or vacate the award is usually verify narrow under the Federal Arbitration Act ("FAA"), *Gateway Tech., Inc. v. MCI Telecomm. Corp.*, 64 F.3d 993, 996 (5th Cir. 1995) (citation omitted), both courts and commentators have made clear that parties may contractually provide -- as the parties here have done -- for an expanded, or less deferential, scope of judicial review of an arbitration award beyond the default standard set forth in Sections 10 and 11 of the FAA (9 U.S.C. §§ 10-11). *See, e.g., id.* at 996-97; *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 288, 293 (3d Cir. 2001); 1 Martin Domke, *Commercial Arbitration* § 39:15 (3d ed. 2003) ("federal courts can expand their review of an arbitration award beyond the grounds set forth in the FAA when, and only to the extent, that parties have so agreed"); Tom Cullinan, *"Contracting for an Expanded Scope of Judicial Review in Arbitration Agreements,"* 51 Vand. L. Rev. 395, 426 (March 1998) ("public policy, as defined through expected benefits to the parties and the courts, supports the conclusion that parties should be allowed to contract for expanded judicial review of arbitration awards").

This heightened standard of review is allowable under the FAA because arbitration is "simply a matter of contract between the parties," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). The primary purpose behind the FAA is to "ensure that private arbitration agreements," such as the one between Esso Chad and Taylors, "are enforced according to their terms." *See Volt Info. Sci. v. Board of Trustees*, 489 U.S. 468, 479 (1989); *Prima Paint Corp. v.*

*Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967). Put another way, "there is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, *according to their terms,* of private agreements to arbitrate." *Volt* at 476 (emphasis added).

The same principles apply to allow parties to vary the FAA's statutory standards governing federal court review. In a leading case, *Gateway Tech., Inc. v. MCI Telecomm. Corp.*, 64 F.3d 993 (5th Cir. 1995), the Fifth Circuit held that the proper standard of review of an arbitration award was *de novo* where the parties had expanded the scope of judicial review by contract in the arbitration agreement. Specifically, the agreement stated that "the arbitration decision shall be final and binding on both parties, except that errors of law shall be subject to appeal." *Id.* at 996. The Fifth Circuit found that the district court had erroneously applied a "harmless error" standard of review instead of reviewing the "errors of law" *de novo* as the parties had expressly agreed and intended. The parties' modification of the standard of review was acceptable because "arbitration is a creature of contract" and "federal arbitration policy demands that the court conduct its review according to the terms of the arbitration contract." *Id.* at 996-97.

Other federal courts around the country have agreed, holding that parties to an arbitration agreement may "opt out of the FAA's off-the-rack vacatur standards and fashion their own (including by referencing state law standards)." *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 293 (3d Cir. 2001) (agreement that judicial review of an arbitrator's decision will be conducted according to standards borrowed from state law), *cert. denied*, 534 U.S. 1020 (2001); *see Syncor Int'l Corp. v. McLeland*, No. 99- 2261, 1997 WL 452245, at **6 (4th Cir. Aug. 11, 1997) (allowing expanded review of an arbitration award where agreement stated that "[t]he arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may

be vacated or corrected by judicial review for any such error" ); *New England Util. v. Hydro-Quebec*, 10 F. Supp. 2d 53 (D. Mass. 1998) (concluding that expanded judicial review is appropriate under the parties' agreement); *Fils et Cables D'Acier de Lens v. Midland Metals Corp.*, 584 F. Supp. 240, 244 (S.D.N.Y. 1984) (enforcing parties' agreement to allow court to review arbitrator's findings "for substantial evidence and legal validity").[4]

Here, as set forth above, the Catering Contract contains, in addition to a generic New York choice of law clause applicable to the agreement as a whole, an arbitration provision that expressly required the Arbitrator, in fashioning his Award, to "apply the laws of the State of New York" and act "in accordance with the terms of this Agreement." Catering Contract, § 18.1 (emphasis added) (Peacocke Decl. Ex. 2). By using this language, the parties intended to impose much stricter requirements on the Arbitrator than under a more typical clause, where the arbitrator is given virtually unfettered discretion within the broad confines of the FAA default vacatur standards and the "manifest disregard" test. *See Gateway Tech.*, 64 F.3d at 996-97; *Fils et Cables D'Acier de Lens*, 584 F. Supp. at 244; *see also Volt Info. Sci., Inc.*, 489 U.S. at 479. In other words, since the parties specifically agreed that the Arbitrator was to apply New York law and interpret the contract according to its terms, "to interpret this phrase short of *de novo* review

---

[4]    We note that some Circuits have held that the FAA does not permit parties to contractually provide for an expanded standard of review of arbitration decisions. *See, e.g., Kyocera Corp. v. Prudential-Bache T Services, Inc.*, 341 F.3d 987 (9th Cir. 2003) (en banc); *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925 (10th Cir. 2001); *UHC Mgmt. Co. v. Computer Scis. Corp.*, 148 F.3d 992 (8th Cir. 1998); *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501 (7th Cir. 1991). However, in at least two of these cases – those decided by the Seventh and Eighth Circuits – this was dicta. As for the others, in the Ninth and Tenth Circuits, they represent a minority view and appear to be based on a flawed policy rationale which puts primacy on the statutory review grounds regardless of what the arbitration agreements say and takes away from the parties the ability to control their own arbitration. *See Kyocera Corp.*, 341 F.3d at 1000; *Bowen*, 254 F.3d at 933-35.

would render the language meaningless and would frustrate the mutual intent of the parties."

*Gateway Tech., supra,* 64 F.3d at 997.

**C.    In the Alternative, this Court Should Apply a
Modified "Manifest Disregard" Standard of Review**

Even if this Court finds that a *de novo* standard of review does not apply here, the strict

requirements of the "manifest disregard" standard must be softened to accommodate the parties'

apparent intent, and FAA's well-articulated policy, to ensure that the Catering Contract is

enforced "in accordance with [its] terms" and with New York law. *See* Catering Contract, §

18.1. Although, in the absence of such specific language, judicial review of an arbitration award

for manifest disregard of the law is "severely limited" – meaning a court may vacate or modify

an arbitration award only where "(1) the 'arbitrators knew of a governing legal principle yet

refused to apply it or ignored it altogether,' and (2) the 'law ignored by the arbitrators . . . [was]

well-defined, explicit, and clearly applicable' to the case," *DiRussa v. Dean Witter Reynolds

Inc.,* 121 F.3d 818, 821 (2d Cir. 1997) (internal citation omitted) – logic dictates that in this case,

where the parties did provide specific guidance, the "manifest disregard" standard, if applied at

all, would have to be modified to take into account the parties' express intent in the Arbitration

Clause. Failure to properly apply New York law or follow the contract terms would thus

constitute manifest disregard of the law requiring the vacatur or modification of the Award. *See

Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir. 1998) (vacating an award on the basis of

manifest disregard of the law).

**III
THE ARBITRATOR EXCEEDED HIS POWERS BY AWARDING ESSO CHAD
DAMAGES PROHIBITED BY THE CATERING CONTRACT**

The Award should be vacated because the Arbitrator exceeded his powers with respect to

the award of damages. *See* 9 U.S.C. § 10(a)(4) (providing in pertinent part that an arbitral award

may be vacated "where the arbitrators exceeded their powers"); *see Ottley v. Schwartzberg*, 819

F.2d 373, 376 (2d Cir. 1987), *cert. denied*, 488 U.S. 944 (1988) (the arbitration "agreement or

submission serves not only to define, but to circumscribe, the authority of arbitrators") (internal

citation omitted).  Quite simply, by awarding $4,030,525.00 to Esso Chad with respect to the

Chadian Judgments, the Arbitrator exceeded the authority granted to him under the Catering

Contract.  The amount of the judgments by the Chadian courts ($2,973,426.00), as well as

overdraft charges incurred by Esso Chad ($198,962.00), attorneys' fees ($731,389.00 ) and

"other costs and expenses" ($126,748.00) are not damages flowing directly from Taylors' breach

of the Catering Contract, but instead are damages which the Arbitrator was specifically

prohibited from awarding pursuant to Sections 5.4 (prohibiting consequential damages) and

Section 13.7 (prohibiting all claims when termination is based on Section 13.4).

### A.        The Claims Are Barred by Section 13.7

There is no dispute that Esso Chad terminated Taylors pursuant to Section 13.4 of the

Catering Contract, which permits termination "[i]n the event that Taylors becomes insolvent."

*See* 12/19/03 Termination Letter; Catering Contract § 13.4 [Peacocke Decl. Exs. 8 and 2].

Section 13.7 of the Catering Contract states, in pertinent part:

> **Neither party shall be liable to the other nor have any claim against such**
> **party for loss of income, anticipated profit or damages for, or on account of,**
> **or arising from any termination of this Agreement pursuant to Subsection**
> **13.4 . . . above. . . .  (Emphasis added).**

This provision plainly prevents Esso Chad from seeking damages against Taylors based on

payments to the suppliers.  After all, Esso Chad paid the suppliers only because Taylors could

not do so.

The Arbitrator, however, sought to sidestep this provision by ruling that "[t]he damages

in respect of Taylors' failure to pay the suppliers arise out of events that existed prior to the

termination of the Catering Contract, and do not arise 'for or on account of, or arising from, the termination.'" Award ¶ 43. That is simply not so. As Esso Chad's attorney, Mr. Cousin, testified, the Chadian judgment against Esso Chad – a judgment based on tort, not contract -- arose from misconduct by Esso Chad *after* it terminated Taylors. Cousin stated:

> What [the contractors] are trying to say is you [Esso Chad] knew that we were owed money and you should have prevented Taylors to leave Chad. . . . They kind of assumed that . . . Esso had the resources to prevent Taylors to go away from Chad. . . . *And the tort is for not having prevented [Taylors] to leave Chad.* Arb. Tr. at 853 (Peacocke Decl. Ex. 7) (emphasis added); *see generally id.* at 851-54.

Indeed, even the breach of contract action related "to a different contractual relationship which the suppliers were alleging to exist between them and Esso [Chad]," a contract which Esso Chad apparently entered into with the contractors *after* Taylors was terminated, as well as a suretyship claim. *Id.* 829; *see generally id.* at 827-30, 836-37; Peacocke Decl. ¶¶ 86 and 87; and Ex. 7.

Similarly, the order which Chadian courts issued against Esso Chad in the *Resourcium* matter, and which led to a garnishment order and damages payment for which Esso Chad obtained reimbursement in the Award, resulted because Esso Chad made a false statement to the Chadian court during a post-termination legal proceeding. Peacocke Decl. ¶¶ 97-98; Cousin Statement ¶ 32 (Peacocke Decl. Ex. 26).

In both cases, therefore, the payments Esso Chad was forced to make resulted from its own conduct in dealing with the contractors (and the Chadian courts) post-termination – conduct which stemmed directly from Taylors' insolvency. Accordingly, the Arbitrator should have applied Section 13.7 to bar any claim against Taylors for these damages.

### B.    Section 5.4 Bars Any Award of Consequential Damages

The Catering Contract bars Esso Chad's claim for another reason: it prohibits the recovery of consequential damages. Section 5.4 of the Catering Contract states, in pertinent part, that:

> **[Taylors] shall not be liable to a member of the Esso Group for any consequential, or indirect damages, or loss of anticipated profits sustained by a member of the Esso Group as a result of the Work, from any cause, including the fault, negligence or breach of a member of the Contractor Group.** (emphasis added).

Therefore, pursuant to the express terms of the agreement between Esso Chad and Taylors, the Arbitrator was not permitted to and should not have awarded consequential damages to Esso Chad. Because the Arbitrator was required to enforce that agreement and follow New York law (which also requires honoring agreements that limit consequential damages), the Award should be vacated.

There is no question that New York law allows a non-breaching party to recover compensatory damages in cases where another party has failed to perform and has breached the contract. *See Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000); *Vitol Trading S.A. v. SGS Control Servs., Inc.*, 874 F.2d 76, 79 (2d Cir. 1989). It is also well established that New York courts recognize two distinctly different types of compensatory damages: direct damages and consequential damages. *See Schonfeld*, 218 F.3d at 175; *Vitol Trading*, 874 F.2d at 79; *American List Corp. v. U.S. News & World Report, Inc.*, 75 N.Y.2d 38, 42-43, 550 N.Y.S.2d 590, 592-593 (1989) (internal citations omitted).

"General" or direct damages are those which "may fairly and reasonably be considered either arising naturally, *i.e.*, according to the usual course of things from such breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." *Hadley v. Baxendale*, 156 Eng. Rep. 145 (ex. 1854); *see, e.g., Roneker v. Kenworth Truck Co.*, 977 F. Supp. 237, 240 n.1 (W.D.N.Y. 1997) ("Under *Hadley* and the contract case law that has followed it, ordinariness or directness in the usual case is the hallmark of a general or direct damage") (internal citation omitted).

Consequential damages, on the other hand, compensate for additional economic losses that do not arise as the natural and probable consequence of the breach. See *Roneker*, 977 F. Supp. at 240 (noting that New York considers expenses incurred beyond the immediate buyer-seller transaction, including those for repairs and maintenance as well as those incurred by the non-breaching party in its dealings with third parties, to be consequential damages); *Schonfeld*, 218 F.3d at 176 ("'consequential' damages ... seek to compensate a plaintiff for additional losses (other than the value of the promised performance)"); *American Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F. Supp. 435, 459-60 (S.D.N.Y. 1976) & n. 44 ("Clearly, any items of increased costs incurred as a consequence of the breach will be considered as consequential damages").

Put another way, "consequential damages do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting." *Petroleo Brasileiro, S. A., Petrobras v. Ameropan Oil Corp.*, 372 F. Supp. 503, 508 (E.D.N.Y. 1974); *see also Ebasco Serv., Inc. v. Pennsylvania Power & Light Co.*, 460 F. Supp. 163, 213 n. 62 (E.D.Pa. 1978) ("New York [has] traditionally considered expenses incurred or gains prevented beyond the immediate buyer-seller transaction to be consequential damages").

Parties are free to limit consequential damages in their agreements, just as Taylors and Esso Chad did in Section 5.4. *Scott v. Palermo*, 233 A.D.2d 869, 649 N.Y.S.2d 289 (App. Div. 1996) (noting that where a contract contains a provision limiting consequential damages, the provision will be enforced, so long as it is found not to be unconscionable). New York law required the Arbitrator to uphold this limitation. His failure to do so requires vacatur of the Award.

1.    **The Award of $2,973,426.00 to Esso Chad for the Chadian Judgments Constitutes Consequential Damages and Should Be Vacated**

The Arbitrator exceeded his powers by awarding to Esso Chad $2,973,426.00 for damages relating to the Chadian Judgments, because those damages are, under New York law, consequential damages. Award, ¶ 48. The Arbitrator determined that "whatever the precise legal basis of the Chadian Judgments, they were clearly a direct consequence of Taylors' failure to pay the suppliers (Tr. Pp. 871-872), and [held] that the matters alleged by Taylors with respect to the basis of the Chadian Judgments do not break the chain of causation or render too remote the damages represented by the amount of the judgments paid by Esso Chad." Award, ¶ 46. But the Chadian Judgments against Esso Chad cannot, under any interpretation of New York law, be considered the direct result of Taylors' breach of the Catering Contract. Taylors' breach arose from its inability to provide catering and general camp services to Esso Chad, including labor and supplies (such as "vehicles, fuel, [and] storage containers"), for a certain set price. *See* Catering Contract, Exhibit A, p1. Direct contract damages under these circumstances would have been, for example, the additional costs Esso Chad incurred to obtain substitute performance, *e.g.,* by finding a replacement contractor. *Bibeau v. Ward*, 228 A.D.2d 943, 946, 645 N.Y.S.2d 107, 111 (App. Div. 1996) ("a party may recover mitigation expenses, that is those expenses that he incurred as a result of the breach"). They do not include payments Esso Chad chose to make to third party contractors as a result of post-termination legal proceedings.

Although Taylors remained obligated to pay its *suppliers* for any outstanding bills, that obligation was not owed to *Esso Chad*. Esso Chad and the Arbitrator rely on Section 10.4 of the Catering Contract to support the contention that Taylors' obligation to pay its suppliers was a duty owed to Esso Chad. Such reliance is misplaced. Section 10.4 addresses the issue of which party – Esso Chad or Taylors – was obligated to pay suppliers. That section of the Catering

Contract specifies that "[Taylors] shall be solely responsible for the payment of all labor

employed by [Taylors]" and "shall also be solely responsible for the payment of all material bills

incurred by [Taylors] in connection with the Work." Catering Contract, Section 10.4, Exhibit

__. It does not state that Taylors owed this duty to Esso Chad.[5]

As this illustrates, the amount of the Chadian court judgment does not reflect "the value

of the very performance promised," but instead represents "additional losses (other than the

value of the promised performance) that are incurred as a result of defendant's breach." *See*

*Schonfeld*, 218 F.3d at 175-176 (distinguishing between direct and consequential damages).

Indeed, as already explained above [at Sect. III (A)], the judgment against Esso Chad in the

action brought by the contractor group, and the garnishment order in the *Resourcium* action, both

resulted from actions Esso Chad took after termination – either by allowing Taylors to leave the

country with its bills unpaid [Witness Statement of Cousin ¶ 18 (Peacocke Decl. Ex. 26)], by

entering into a post-termination agreement with the contractors with which it failed to comply

(*Id*. at ¶¶ 838-39), or by making a false statement to a Chadian court (*Id*. at ¶ 32). These are the

very archetype of consequential damages, and the Arbitrator should not have awarded them.[6]

### 2. The Award of $198,962.00 to Esso Chad for Overdraft Charges Constitutes Consequential Damages and Should Be Vacated

---

[5] This becomes even clearer when Section 10.4 is compared to Section 7.1 (taxes), where it is specified that Taylors has a direct obligation to Esso Chad for "all taxes" incurred by Esso Chad "for or on account of any payment made to or earned by [Taylors] or any contractor or subcontractor of [Taylors] in connection with the WORK. . . ."

[6] Similarly, if the portion of the Award "declaring" Taylors liable for any damages Esso Chad pays to Senev-Tchad ever becomes liquidated, that would represent an award of consequential damages as well, and would require vacatur for the same reason.

The Arbitrator also improperly awarded to Esso Chad $198,962.00, the "amount of overdraft charges which Esso Chad paid in consequence of the attachment orders against Esso Chad's bank accounts, which attachment order arose out of the suppliers' claims." Award, ¶ 49. This award is yet another step removed from Taylors' breach of contract and should be categorized as consequential damages.

### 3. The Award of $731,389.00 to Esso Chad for Attorneys' Fees Should Be Vacated

The Arbitrator also awarded to Esso Chad "attorneys' fees expended by Esso Chad in defending itself against the claims by the Chadian suppliers" in the amount of $731,389.00. Award, ¶ 51. Esso Chad incurred these legal fees in defending itself in the suppliers' action and the *Resourcium* action. Again, this award falls into the category of consequential damages.

Indeed, one need look no further than the case cited by the Arbitrator, *A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank A.G.,* 926 F. Supp. 378 (S.D.N.Y. 1996), to prove this point. There, the court ruled that the non-breaching party could be awarded the attorneys fees incurred in a suit against a third party stemming from the breach, but it described these litigation expenses as *"incidental and consequential damages." Id.* at 385 (emphasis added).

4.     **The Award of $126,748.00 to Esso Chad for "Other Costs and Expenses" Constitutes Consequential Damages and Should Be Vacated**

The Arbitrator also awarded Esso Chad $126,748.00 for "other costs and expenses" that "were incurred as a consequence of the situation with respect to Taylors' suppliers." Award, ¶ 52. These "other" damages include, *inter alia*, "fees to secure and review the books and records of Taylors in Chad." Esso Chad Pre-Hearing Memorial, ¶ 82. These costs incurred by Esso Chad are not the direct result of Taylors' breach of the Catering Contract and therefore, should be categorized as consequential damages.

5.     **Alternatively, The Arbitrator's Award Of Damages To Esso Chad For Expenses Relating To The Chadian Court Judgments Is A Manifest Disregard Of New York Law And Should Be Vacated**

Even if a *de novo* review standard is somehow not applied, the Arbitrator's award of consequential damages to Esso Chad for expenses relating to the Chadian Judgments was such an obvious violation of basic New York legal principles as to constitute "manifest disregard of the law." As already noted, an arbitral award may be vacated for manifest disregard "if 'a reviewing court . . . finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'" *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 263 (2d Cir. 2003) (internal citation omitted).

The New York law regarding consequential damages is "well defined, explicit, and clearly applicable to the case," as shown in our discussion above. Both sides provided almost identical descriptions of consequential damages in their Post-Hearing Memorials, citing the same cases we cite here. *See* Esso-Chad Post-Hearing Memorial, pp. 3-4; Taylors Post-Hearing Memorial ¶ 21. And the Arbitrator disregarded those principles although they were clearly and accurately presented to him. Accordingly, this portion of the Award should be vacated for

"manifest disregard of the law." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir. 1998)

(vacating an award on the basis of manifest disregard of the law).

## IV
## THE ARBITRATOR IGNORED NEW YORK LAW IN RULING THAT TAYLORS HAD FAILED TO ESTABLISH ITS CONVERSION CLAIM

There is no dispute that Esso Chad terminated the Catering Contract on December 19,

2003, that Senev-SSI, by pre-arrangement with Esso Chad, immediately took over Taylors'

functions at the Komé camp in Chad, and that Senev-SSI performed those functions in part by

using food and other assets belonging to Taylors that were located at the Komé camp (the "Komé

Camp Assets"). Nevertheless, despite being presented with the basic principles of New York

law on conversion, the Arbitrator denied Taylors' conversion claim. *See* Award at ¶¶ 29-32.

The Arbitrator determined that: (i) New York law required Taylors to formally demand the

return of the Komé Camp Assets; (ii) Taylors failed to make such a demand [*id.* ¶¶ 30, 32]; and

(iii) Taylors is equitably estopped from claiming a conversion because it supposedly authorized

Esso Chad's continued use of the Komé Camp Assets. *Id.* ¶ 33. In reaching these conclusions,

the Arbitrator disregarded basic principles of New York law, and thereby exceeded his authority

under the Agreement. Indeed, the mistake he made was so fundamental that he "manifestly

disregarded" the New York law of conversion.

**A.      Taylors Did Not Need to Demand Return of the Komé Camp Assets**

Conversion is "the unauthorized assumption and exercise of the right of ownership over

goods belonging to another to the exclusion of the owner's rights." *Vigilant Ins. Co. of Am. v.*

*Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 347 (1995)

(citation omitted). The right of possession may be infringed by a wrongful taking, a wrongful

detention, or a wrongful disposal of personal property. *State of New York v. Seventh Regiment*

*Fund, Inc.*, 98 N.Y.2d 249, 260, 746 N.Y.S.2d 637, 646 (2002) ("Some affirmative act –

asportation by the defendant or another person, denial of access to the rightful owner or assertion to the owner of a claim on the goods, sale or commercial exploitation of the goods by the defendant – has always been an element of conversion").

Taylors demonstrated at the hearing that Senev-SSI, at Esso Chad's direction, engaged in the type of wrongful taking or detention that constitutes conversion: it took possession of the Komé Camp Assets and began to use them to fulfill its obligations under the new catering contract it had secretly entered into with Esso Chad. *See* Peacocke Decl.¶¶ 40-46; A. Bechir Breme (Senev-Tchad) 1/30/04 Letter to S. Ali (Peacocke Decl. Ex. 18) ("Once payment is made in full, *I will be in a position to enter into negotiations with you regarding the possible purchase of assets and stock . . .* I confirm that all material that *has been used by SENEV* has been fully accounted for and will be reimbursed at the right prices") (emphasis added); Witness Statement of Jon Murphy, ¶ 35 (Senev-SSI supplied Taylors with "stock check" sheets "showing the stock they had supposedly taken over from Taylors") (Peacocke Decl. Ex. 6).

Nevertheless, the Arbitrator imposed an additional requirement: that Taylors had to show it made a formal demand for return of its property. Award, ¶ 30. This was wrong. New York law is clear that no demand is required where, as here, conversion is based upon a wrongful taking and/or wrongful detention.[7] "As to the wrongful taking, there need not be a demand." *Chemical Bank v. Soc. Brand Indus., Inc.*, 624 F.Supp. 979, 983 (S.D.N.Y. 1985) (*citing Schanbarger v. Dott's Garage,* 61 A.D.2d 43, 402 N.Y.S.2d 72 (App. Div. 1978)). The necessity for a demand and refusal in a claim for conversion arises when the defendant is in lawful possession of the property. The reason for this rule is "that one in lawful possession shall not

---

[7]    A demand and refusal are not requirements of all, or even most, conversion claims. *See Seventh Regiment Fund, supra,* 98 N.Y.2d at 260, 746 N.Y.S.2d at 646 ("courts from an early date have protected unsuspecting defendants by requiring plaintiffs, *under some circumstances,* to show that they demanded the goods and were refused") (emphasis added).

have such possession changed into an unlawful one until he be informed of the defect of his title and have an opportunity to deliver the property to the true owner." *Leveraged Leasing Admin. Corp. v. Pacificorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996) *citing Employer's Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 105-106 (1927) (given the "unduly technical" nature of the demand requirement, "[n]o precedent imposes such a useless procedure" where defendant already had knowledge that it did not have title to the goods).

There is no claim or contention, nor could there be, that Esso Chad and/or SENEV believed they had lawful possession of the Komé Camp Assets. The January 30, 2004 letter by Senev-Tchad official A. Bechir Breme cited on the previous page (Peacocke Decl. Ex. 18) indicates that its author knew full well that SENEV-SSI and Esso Chad had no possessory interest in those Assets, and that SENEV-SSI and/or Esso Chad would have to account to Taylors for each and every one of the Assets, by either holding them in safekeeping or paying for them. *Id.; see also* Peacocke Decl. ¶¶ 50-60 (describing numerous admissions by Esso Chad); S. Ali 1/29/04 Letter to A. Bechir (Ex. R102) (Peacocke Decl. Ex. 18) ("I spoke to Greg . . . and he confirmed that SENEV was keeping an accurate record of all the materials used by your company. He also said you wanted to pay the price without tax. . . . ").

Under these circumstances, Taylors did not have to make a formal demand for return of the goods. "If demand would be futile because the circumstances show that the defendant knows it has no right to the goods, demand is not required." *Seventh Regiment Fund, supra,* 98 N.Y.2d at 260, 746 N.Y.S.2d at 646.

**B.    Taylors Satisfied Any Demand Requirement**

In any event, Taylors satisfied the demand requirement in two ways.

*First,* Taylors met the demand requirement simply by bringing an action for conversion. *Banco Central de Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01CIV9649, 2005 WL

53271, at *6 (S.D.N.Y. Jan 07, 2005); *Chemical Bank v. Society Brand Indus., Inc.*, 624 F.Supp. 979, 982 (S.D.N.Y. 1985) ("Bringing an action for conversion serves as notice of an adverse claim.").

*Second,* Taylors repeatedly demanded that Esso Chad pay for the Komé Camp Assets, since trying to obtain their return from a remote outpost in Chad was hardly practical.  Just after the termination, Taylors Operations Director John Murphy asked an Esso Chad official to "help us with the security of our goods and assets."  Murphy Statement ¶ 32.  The exchange of correspondence between Taylors official Shabbir Ali and Mr. Breme of Senev-Chad in late January 2004 shows that Taylors was demanding compensation for what Esso Chad had taken – and that Esso Chad was prepared to pay what it owed.  Peacocke Decl. Exs. 13 and 18.  Indeed, when Esso Chad's counsel confronted Jon Murphy of Taylors with these letters at the hearing, and asked whether the letters contained a demand that Esso Chad "stop using [the Komé Camp] Assets," Murphy responded:  "No, *because we were trying to negotiate with [SENEV] to purchase them."*  Arb. Tr. at 507 (Peacocke Decl. Ex. 7) (emphasis added).  The request for money rather than the goods themselves under these circumstances surely satisfied any "demand" requirement, since it put Esso Chad on notice that Taylors viewed its possession of the Komé Camp Assets as wrongful.  *Fleet Capital Corp. v. Yamaha Motor Corp.*, No. 01 Civ. 1047, 2002 WL 31174470, at *24 (S.D.N.Y. Sept. 26, 2002) ("The November Demand Letter put [defendant] on notice that [plaintiff] considered the sale of [goods] to be improper. On the facts of this case, the demand requirement is satisfied or excused").

**C.    Taylors Did Not Authorize the Transfer of the Assets**

The Arbitrator also found, apparently as an independent ground for denying the conversion claim, that "Taylors is equitably estopped from asserting this claim, in that Taylors

acquiesced in Senev-SSI's use of the [Komé Camp A]ssets." Award, ¶ 31. There was, however, no estoppel here.

To establish an estoppel under New York law, "the party seeking estoppel must demonstrate a lack of knowledge of the true facts; reliance upon the conduct of the party estopped; and a prejudicial change of position." *Burrowes v. Combs,* 25 A.D.3d. 370, 372, 808 N.Y.S.2d 50, 52 (App. Div. 2006) (internal citation omitted). The Arbitrator did not cite these basic elements, much less rely on them. In fact, he supported his estoppel ruling solely with the letters between Ali and Breme, and with Murphy's testimony. Award ¶ 31. But this evidence demonstrates the exact opposite of an estoppel: it shows that Esso Chad and Senev-Tchad knew full well that Taylors claimed ownership of the Komé Camp Assets, and that Taylors expected them to pay for some of those Assets and to account for the rest. Peacocke Decl. Exs. 13 and 18. Moreover, Esso Chad and SENEV-SSI took possession of the Assets not in reliance on anything Taylors did or said, but as part of a concerted plan in connection with Esso Chad's termination of Taylors' Catering Contract. Peacocke Decl. ¶¶ 47-58.

There was, in short, no estoppel here. Nor did Taylors acquiesce in Esso Chad and SENEV-SSI's actions; its repeated demands to have the goods secured and paid for are proof positive of that. The Arbitrator's ruling in this regard was manifestly wrong, and should be vacated.

## CONCLUSION

For the reasons stated above, Esso Chad's Petition to confirm the Award should be denied, and Taylor's Cross-Petition to vacate the Award should be granted.

Dated: New York, New York
      June 22, 2006

Ronald C. Minkoff (RM-2943)
Cameron A. Myler (CM -7942)
FRANKFURT KURNIT KLEIN & SELZ, PC
488 Madison Avenue
New York, New York  10022
Tel. (212) 980-0120
Fax  (212) 593-9175

Teresa R. Peacocke
**(not yet admitted)**
3 Stone Buildings New York
10 Rockefeller Plaza, 16th Floor
New York, New York  10020

*Attorneys for Defendant*

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                            ) SS.
COUNTY OF NEW YORK  )

        I, Carie A. Fischer, state that I am over eighteen years of age and reside in Brooklyn, New York.

        On Friday, June 23, 2006, I served the attached PLAINTIFF NOTICE OF CROSS-MOTION TO VACATE ARBITRATION AWARD, DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO CONFIRM ARBITRATION AWARD AND IN SUPPORT OF CROSS-MOTION TO VACATE, DECLARATION OF TERESA PEACOCKE, EXHIBITS 1-15, and EXHIBITS 16-38 TO THE DECLARATION OF TERESA ROSEN PEACOCKE by federal express upon the following at their last known address:

Mr. Reagan M. Brown
Fulbright & Jaworski LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
United States of America
Telephone: +1.713.651.5151

                                                      _____
                                                      Carie A. Fischer

SWORN TO before me
this 23rd day of June 2006.

_____
Notary Public

ROSEMARY SETTEDUCATO
Notary Public, State of New York
No. 24-4678133
Qualified in New York County
Commission Expires Dec 31, 2006

U.S. Department of Justice
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF Esso Exploration and Production Chad, Inc. | COURT CASE NUMBER 06 Civ. 4401 (RmB) |
|---|---|
| DEFENDANT Taylors International Services LTD., et al | TYPE OF PROCESS Personal |

| | NAME OF INDIVIDUAL, COMPANY, CORPORATION. ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN |
|---|---|
| SERVE AT | Esso Exploration c/o Corporation Service Company |
| | ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code) 2711 Centerville Road, Suite 400 Wilmington, DE 19808 |

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW

| Ron Minkoff, Esq. Frankfurt Kurnit Klein & Selz 488 Madison Ave, 9th floor New York, NY 10022 | Number of process to be served with this Form 285 | 1 |
|---|---|---|
| | Number of parties to be served in this case | 1 |
| | Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (*Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service*):

Fold — Phone: 302-636-5401   Service on Friday June 23, 2006 — Fold
Business Hours

Ronald Minkoff

| Signature of Attorney other Originator requesting service on behalf of: Ronald Minkoff | ☐ PLAINTIFF ☑ DEFENDANT | TELEPHONE NUMBER 212-980-0120 | DATE 06/22/06 |
|---|---|---|---|

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY– DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. (*Sign only for USM 285 if more than one USM 285 is submitted*) | Total Process | District of Origin No. 15 | District to Serve No. 5 | Signature of Authorized USMS Deputy or Clerk 6F | Date 6-23-06 |
|---|---|---|---|---|---|

I hereby certify and return that I ☑ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual , company, corporation, etc., at the address shown above on the on the individual , company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above (*See remarks below*)

| Name and title of individual served (*if not shown above*) Mary Drummond | ☐ A person of suitable age and discretion then residing in defendant's usual place of abode |
|---|---|
| Address (*complete only different than shown above*) | Date 6/23/06 | Time 3:20 ☐ am ☐ pm |
| | Signature of U.S. Marshal or Deputy |

| Service Fee 45.00 | Total Mileage Charges including endeavors) 4.45 | Forwarding Fee | Total Charges 49.45 | Advance Deposits 60.00 | Amount owed to U.S. Marshal* or (Amount owed or Refund*) Refund = $10.55 |
|---|---|---|---|---|---|

REMARKS:

PRINT 5 COPIES: 1. CLERK OF THE COURT
2. USMS RECORD
3. NOTICE OF SERVICE
4. BILLING STATEMENT*: To be returned to the U.S. Marshal with payment, if any amount is owed. Please remit promptly payable to U.S. Marshal.
5. ACKNOWLEDGMENT OF RECEIPT

PRIOR EDITIONS MAY BE USED

Form USM-285
Rev. 12/15/80
Automated 01/00