UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                  :

ESSO EXPLORATION AND         :
PRODUCTION CHAD, INC.,       :     06 Civ. 4401 (RMB)
                  :

           Plaintiff,    :
                  :

      - against -     :
                  :

                  :

TAYLORS INTERNATIONAL    :
SERVICES LTD., ET AL.      :
                  :

          Defendant.   :
                  :
-------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFF'S MOTION TO CONFIRM ARBITRAL AWARD</u>

Mark A. Robertson (MR8906)
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York  10103
Telephone:  212.318.3000
Facsimile:  212.318.3400

Reagan M. Brown (*pro hac vice pending*)
David J. Levy (*pro hac vice pending*)
Charles Jason Rother (*pro hac vice pending*)
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  713.651.5151
Facsimile:  713.651.5246

Dated:     New York City, New York
           August 4, 2006

***Electronic Filing***

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ ii

I.       Summary Of Argument ........................................................................................ 1

II.      Background .......................................................................................................... 2

III.     Motion to Confirm The Award ............................................................................ 3

         A.      Jurisdiction and Venue Are Proper ......................................................... 3

         B.      The Motion To Confirm Is Timely .......................................................... 3

         C.      The Arbitration Award Is Valid and Confirmation Is Appropriate ......... 4

                 1.      The Governing Law for Judicial Review of Arbitration Awards .............. 4
                 2.      The Award Should Be Confirmed ........................................................... 5

IV.      No Grounds Exist for Vacating The Award or Refusing To Enforce The Award ............ 5

         A.      The Award Does Not Exceed The Sole Arbitrator's Powers ................................. 6

                 1.      The Sole Arbitrator Did Not Exceed His Authority .................................. 6
                 2.      The Parties Did Not Agree To Expand The Scope of Judicial Review ...... 7

         B.      The Award Was Final And Definite ........................................................ 10

                 1.      The Award Relating To Payment Of Taylors' Suppliers Is Final ............ 11
                 2.      The Declaration Award Is Final ............................................................. 12

         C.      The Damages Awarded To Esso Chad Are Appropriate ...................................... 14

                 1.      The Sole Arbitrator's Award  Did Not Exceed
                         His Authority By Awarding Damages ..................................................... 14
                 2.      The Sole Arbitrator Did Not Manifestly Disregard New York Law ........ 15
                 3.      The Sole Arbitrator Did Not Manifestly Disregard the Law in Making
                         Factual Findings as to Certain Provisions of the Catering Contract ......... 17

         D.      The Sole Arbitrator Did Not Manifestly Disregard
                 New York Law In Denying Taylors' Conversion Claim ...................................... 18

V.       Prayer For Relief ............................................................................................... 20

# TABLE OF AUTHORITIES

**A.    Federal Cases**

*Action Industries, Inc. v. U.S. Fidelity & Guaranty Co.*,
358 F.3d 337 (5th Cir. 2004) ....................................................................7, 9

*Americas Insurance Co. v. Seagull Compania Naviera, S.A.*,
774 F.2d 64, 67 (2d Cir. 1985)........................................................................4

*Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*,
579 F.2d 691 (2d Cir. 1978)............................................................................4

*Banco de Seguros del Estado v. Mutual Marine Office, Inc.*,
344 F.3d 255, 262 (2d Cir. 2003)..................................................................10

*Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 122 (2d Cir. 1991) ...................6

*Bowen v. Amoco Pipeline Co.*, 254 F.3d 925 (10th Cir. 2001)...........................................7

*Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*,
935 F.2d 1501 (7th Cir. 1991) ........................................................................7

*Duferco International Steel Trading v. T. Klaveness Shipping A/S*,
333 F.3d 383 (2d Cir. 2003)......................................................................4, 10

*Fils et Cables D'Acier de Lens v. Midland Metals Corp.*,
584 F. Supp. 240, 244 (S.D.N.Y. 1984).........................................................8

*Gateway Technology, Inc. v. MCI Telecommunication Corp.*,
64 F.3d 993, 996 (5th Cir. 1995) ...................................................................8

*Hoeft v. MVL Group, Inc.*, 343 F.3d 57 (2d Cir. 2003) ...................................................15

*Huntington Hospital v. Huntington Hospital Nurses' Association*,
302 F.Supp.2d 34, 40 (E.D.N.Y. 2004) ........................................................10

*Ingersoll Mill. Machine Co. v. M/V Bodena*,
829 F.2d 293, 309 (2d Cir. 1987)..................................................................16

*International Brotherhood of Electrical Workers v. Niagara Mohawk Power
Corp.*, 143 F.3d 704, 725-26 (2d Cir. 1998) ................................................19

*Jamaica Commodity Trading Co. Ltd. v. Connell Rice & Sugar Co., Inc.*,
766 F.Supp. 138, 157-158 (S.D.N.Y. 1991) .................................................16

*Kyocera Corp. v. Prudential-Bache T Services, Inc.*,
   341 F.3d 987 (9th Cir. 2003) ..................................................................7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*,
   808 F.2d 930, 933 (2d Cir. 1986)..........................................................4

*Michaels v. Mariforum Shipping, S. A.*, 624 F.2d 411, 413-414 (2d Cir. 1980)...............10

*Puerto Rico Telephone Co., Inc. v. U.S. Phone Manufacturing*,
   427 F.3d 21 (1st Cir. 2005)...............................................................7, 9

*Roadway Package System, Inc. v. Kayser*, 257 F.3d 287, 296 (3rd Cir. 2001) ..................8

*Schonfeld v. Hillard*, 218 F.3d 164 (2d Cir. 2000) ...........................................16

*Siegel v. Titan Industrial Corp.*, 779 F.2d 891, 892-93 (2d Cir. 1985) ...........................19

*Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) .....................9

*Syncor International Corp. v. McCleland*,
   No. 99-2261, 1997 WL 452245, *6 (4th Cir. 1997) .......................................8

*Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 2006 WL
   147586, *2 (S.D.N.Y. Jan. 20, 2006)......................................................15

*UHC Mgmt. Co. v. Computer Scis. Corp.*, 148 F.3d 992 (8th Cir. 1998)...........................7

*W.K. Webster & Co. v. Am President Lines, Ltd.*, 32 F.3d 665 (2d Cir. 1994) ..................6

*Wallace v. Buttar*, 378 F.3d 182 (2d. Cir. 2004) ...............................................4

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 214 (2d Cir. 2002) ..........17

*Willemijn Houdstermaatschappij v. Standard Microsystems Corp.*,
   103 F.3d 9 (2d Cir. 1997) ..................................................................4

**B.    State Cases**

*American List Corp. v. U.S. News & World Report, Inc.*,
   75 N.Y.2d 38, 42 (N.Y. 1989) ..............................................................15

*Cohen v. S.A.C. Capital Advisors, LLC*,
   2006 WL 399766, 815 N.Y.S.2d 493 (N.Y. Sup. Ct. 2006)........................................10

*New York Public Interest Research Group, Inc. v. Carey*,
   42 N.Y.2d 527, 530-531 (N.Y. 1977)........................................................13

*Park Avenue Clinical Hospital v. Kramer*, 26 A.D.2d 613 (4th Dept 1966), *affd* 19 N.Y.2d 958 (1967) .........................................................................................13

*Vigilant Insurance Co. of America v. Housing Authority of City of El Paso, Tex.*, 637 N.Y.S.2d 342, 347 (N.Y. 1995) ...........................................................18

*Walrath v. Redfield*, 11 Barb. 368 (N.Y.Sup. 1851) .........................................15

**C.     Federal Statutes**

9 U.S.C. § 9 *et seq.* ..............................................................................................3

9 U.S.C. § 10 .................................................................................................5, 6, 10

9 U.S.C. § 13 ..........................................................................................................2

9 U.S.C. §§ 201 *et seq.* ..........................................................................................3

9 U.S.C. § 203 ........................................................................................................3

9 U.S.C. § 204 ........................................................................................................3

9 U.S.C. § 207 ........................................................................................................3

**D.     State Statutes**

N.Y. CPLR 3001........................................................................................................3

**E.     Other Authorities**

Kristen M. Blankley, *Be More Specific! Can Writing A Detailed Arbitration Agreement Expand Judicial Review Under The Federal Arbitration Act?*, 2 Seton Hall Circuit Review 391 ..................................................................................7

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO CONFIRM ARBITRAL AWARD**

Plaintiff Esso Exploration and Production Chad, Inc. ("Esso Chad") files this memorandum of law in support of its Motion to Confirm Arbitral Award. The arbitration award ("Award") was rendered by a sole arbitrator, Mr. Carlos Bianchi (the "Sole Arbitrator") under the auspices of the International Chamber of Commerce International Court of Arbitration ("ICC") and approved by the ICC Court on March 27, 2006, in ICC Case No 13 491/JNK/EBS. The Award is in all respects proper and confirmation of the Award by this Court is appropriate.

**I.     Summary Of Argument**

Confirmation of the Award by this Court is appropriate under the extremely narrow judicial review standard circumscribed under federal law. No credible arguments exist to vacate the Award or to refuse to enforce the Award for the following reasons:

1.     The Sole Arbitrator did not exceed his authority – he made no rulings beyond the bounds of New York law or inconsistent with the terms of the Catering Contract.

2.     The "manifest disregard" standard controls this Court's review of the Award. Neither the language used by the parties in the arbitration agreement underlying the Award nor existing case law authorized the Court to apply a different standard of review in this case.

3.     The Sole Arbitrator did not exceed his authority with respect to the finality of the Award. The Sole Arbitrator determined all damages and liability issues presented to him. Furthermore, the portion of the Award rendering a declaration as to Taylors' duty to indemnify Esso Chad is appropriate under New York law.

4.     The Sole Arbitrator did not exceed his authority or ignore the law by awarding certain damages. The Sole Arbitrator considered the evidence, applied the law, and determined the amount of damages to be awarded.

5.     The Sole Arbitrator properly followed and applied New York conversion law in denying Taylors' conversion claim.

Accordingly, this Court should confirm the Award and enter judgment in conformance with the Award.

## II.   Background

The relevant procedural background is as follows:[1]

- On September 23, 2004, Taylors filed a Request for Arbitration with the ICC.[2]

- On November 30, 2004, Esso Chad answered and filed counterclaims.[3]

- The Sole Arbitrator was appointed by the ICC on February 25, 2005, in accordance with Article 9(3) of the ICC Rules of Arbitration.[4]

- The parties appeared in New York before the Sole Arbitrator at evidentiary hearings held from November 16, 2005, to November 18, 2005, and from December 14, 2005, through December 16, 2005.[5]

---

[1] Esso Chad will not repeat the factual background related to this matter.  Any such information (to the extent necessary for the Court's review) is contained within the briefing and evidence submitted to the Sole Arbitrator.  *See e.g.,* **Exhibit A** (Counterclaim and Answer Of Esso Exploration and Production Chad Inc., Essential Facts Section, attached in pertinent part without exhibits).

[2] *See* Declaration of Mr. Reagan M. Brown, attached as **Exhibit B**; *see also* Original Docket No. 11 (Affidavit of Mr. C. Charles Dippel, Exhibit B).

[3] *See* **Exhibit B** (Declaration of Mr. Reagan M. Brown).

[4] *See* February 28, 2005, Correspondence from ICC to Counsel (confirming appointment of Mr. Carlos Bianchi and attaching Arbitrator's Declaration of Acceptance and Statement of Independence), attached collectively with other correspondence as **Exhibit C**.  Esso Chad has also attached, pursuant to 9 U.S.C. § 13, correspondence related to (a) the selection or appointment of the Sole Arbitrator and (b) the extension of time granted to make the award.

[5] *See* **Exhibit B** (Declaration of Mr. Reagan M. Brown).

- The Sole Arbitrator – following the evidentiary hearings, the receipt of witness statements, and the submission of both pre-hearing and post-hearing briefs by the parties – submitted his award to the ICC for consideration.  On March 27, 2006, the ICC approved the award of the Sole Arbitrator.[6]

- Beginning on April 10, 2006, Esso Chad moved to reinstate the matter pending in the Southern District of Texas and confirm the Award.[7]

- On June 1, 2006, the court in the Southern District of Texas ordered that this matter be transferred to the Southern District of New York.[8]

Based upon this history, confirmation of the Award is appropriate.

## III.    MOTION TO CONFIRM THE AWARD

Esso Chad seeks confirmation of the Award pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201 *et seq*. (the "New York Convention") and the Federal Arbitration Act, 9 U.S.C. §§ 9 & 13 *et seq*. (the "FAA").

### A.    Jurisdiction and Venue Are Proper

This Court has jurisdiction to entertain this motion pursuant to 9 U.S.C. § 203. Additionally, venue is proper in this district pursuant to 9 U.S.C. § 204.

### B.    The Motion To Confirm Is Timely

Esso Chad's motion to confirm, filed within one year of the Award, is timely.[9]

---

[6] *See* Award, ICC Case No 13 491/JNK/EBS ("Award") at p. 3, ¶12, attached as **Exhibit D**.

[7] *See* Original Docket Nos. 18, 19, 21, 22, and 25.

[8] *See* Original Docket No. 30.

[9] 9 U.S.C. § 207 (establishing three year deadline to move for confirmation under New York Convention); 9 U.S.C. § 9 (establishing one year deadline to move for confirmation under FAA).

### C.    The Arbitration Award Is Valid and Confirmation Is Appropriate

#### 1.    The Governing Law for Judicial Review of Arbitration Awards

Judicial review of an arbitration award is "very narrowly limited."[10]  The review is so narrowly limited "to avoid undermining the twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation."[11]  Outside of the limited circumstances set forth in the FAA, a reviewing court may not vacate an arbitration award unless the award exhibits a "manifest disregard" of the law that "is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law."[12] The error complained of "must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator."[13]  A party seeking to vacate an award must further prove that the arbitrator was (a) fully aware of the existence of a clearly defined governing legal principle, and (b) simply refused to apply it.[14]  As long as the arbitrator makes "even a barely colorable justification for the outcome reached" then confirmation of the award cannot be prevented, even in the face of persuasive argument.[15]

---

[10]  *See Americas Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir. 1985).

[11]  *Willemijn Houdstermaatschappij v. Standard Microsystems Corp.*, 103 F.3d 9 (2d Cir. 1997).

[12]   *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003); *see also Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004).

[13]  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986).

[14]  *Duferco*, 333 F.3d at 389.

[15]  *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691 (2d Cir. 1978).

### 2.    The Award Should Be Confirmed

The Award in this matter resulted from a reasoned decision by an unbiased Sole Arbitrator who analyzed lengthy evidentiary submissions, hearings, pre-hearing and post-hearing briefs and then rendered a final award consistent with the evidence and the applicable law.  The evidence submitted for consideration by the Sole Arbitrator included the following:

- At least 29 witness statements (including original witness statements, rebuttal witness statements, and supplemental witness statements).[16]

- 6 days worth of testimony (including testimony received from eleven (11) witnesses), producing in excess of 1,500 pages of transcript.[17]

- 976 exhibits, consisting of more than 7,500 pages.[18]

- Substantial, substantive briefing submitted by both of the parties that included, but was not limited to, a Request for Arbitration, a Counterclaim and Answer, Motions for Summary Judgment, and Pre-Hearing and Post-Hearing Memorials.[19]

## IV.    No Grounds Exist for Vacating The Award or Refusing To Enforce The Award

A review of the Award itself leaves no doubt that the Sole Arbitrator properly considered the evidence, cogently analyzed the issues addressed within the parties' briefing, and correctly rendered the Award.  The Sole Arbitrator did not exceed his authority or manifestly disregard the law.  The Award was a final and definite award.  Thus, no credible argument exists to support a "refusal or deferral of recognition or enforcement," vacatur or modification of the Award.[20]

---

[16]  *See* **Exhibit B** (Declaration of Mr. Reagan M. Brown).

[17]  *See* **Exhibit B** (Declaration of Mr. Reagan M. Brown).

[18]  *See* **Exhibit B** (Declaration of Mr. Reagan M. Brown).

[19]  *See* **Exhibit B** (Declaration of Mr. Reagan M. Brown).

[20]  *See* 9 U.S.C. § 10 and 11.

### A.    The Award Does Not Exceed The Sole Arbitrator's Powers

The Sole Arbitrator did not exceed his authority in rendering his decision that resulted in the Award.  The Sole Arbitrator properly followed and applied New York law to the facts.  No authority exists for refusing to apply the controlling "manifest disregard" standard of review.

### 1.    The Sole Arbitrator Did Not Exceed His Authority

The Sole Arbitrator properly followed and applied New York law to the facts presented in the arbitration proceeding.  A review of the Award itself makes clear that this is not a case in which the Sole Arbitrator failed or refused to apply the controlling law.[21]  The level of disregard that existed in *Barbier* – which is nowhere to be found in this matter – is required before an arbitrator is considered to have "exceeded his authority" under 9 U.S.C. § 10(a)(4).

Unlike *Barbier*, the Sole Arbitrator made no rulings blatantly outside the confines of New York law.  The Sole Arbitrator rendered the Award consistent with the evidence and the applicable New York law.  The fact that the Sole Arbitrator refused to apply New York law in Taylors' favor is no ground for vacating the Award.[22]

---

[21]    *Compare Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 122 (2d Cir. 1991) (holding that arbitration panel awarded punitive damages – which unquestionably could not be received under New York law for the claim at issue – and thereby exceeded their authority under 9 U.S.C. § 10(a)(4)).

[22]    *See W.K. Webster & Co. v. Am President Lines, Ltd.*, 32 F.3d 665, 669 (2d Cir. 1994) (finding that the court "must not disturb an award simply because of an arguable difference of opinion regarding the meaning or applicability of the laws.").

### 2. The Parties Did Not Agree To Expand The Scope of Judicial Review

The Award also cannot also be attacked by applying a standard of review different from the controlling "manifest disregard" standard of review. The generic, form arbitration clause found within the Catering Contract does not evidence a specific agreement to eliminate the "manifest disregard" standard. The parties did not agree to expand the scope of judicial review of any arbitration award rendered under the Catering Contract. Initially, it is far from clear that parties have the right to contractually provide for a more lenient standard of review than that found under the FAA.[23] But to the extent they can, the parties must use unambiguous language that expressly displaces the FAA standard.[24]

---

[23] *See e.g., Kyocera Corp. v. Prudential-Bache T Services, Inc.*, 341 F.3d 987 (9th Cir. 2003) (en banc) (holding held that the FAA does not allow parties to provide for a more lenient standard of review); *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925 (10th Cir. 2001) (same); *UHC Mgmt. Co. v. Computer Scis. Corp.*, 148 F.3d 992 (8th Cir. 1998) (same); *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501 (7th Cir. 1991) (same); *see e.g.*, Kristen M. Blankley, *Be More Specific! Can Writing A Detailed Arbitration Agreement Expand Judicial Review Under The Federal Arbitration Act?*, 2 Seton Hall Circuit Review 391 (2006) (providing a thorough analysis of the circuit split on this issue and concluding that the approach taken by the Ninth and Tenth Circuits – disallowing contractual expansion of the manifest disregard review standard – is better than the approach followed in other circuits).

[24] *See Puerto Rico Telephone Co., Inc. v. U.S. Phone Mfg.*, 427 F.3d 21, 31 (1st Cir. 2005) (analyzing circuit split and concluding that parties can contract to displace the FAA standard of review, but that displacement can be achieved only by clear contractual language); *Action Industries, Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 341 (5th Cir. 2004) (holding that

For example:

- "the arbitration decision shall be final and binding on both parties, **except that errors of law shall be subject to appeal**"[25]

- "[t]he arbitrator **shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected by judicial review for any such error**."[26]

- "Upon application to the court for an order confirming said award, **the court shall have the power to review (1) whether the findings of fact rendered by the arbitrator are, on the entire record of said arbitration proceedings, supported by substantial evidence, and (2) whether as a matter of law based on said findings of fact the award should be affirmed, modified, or vacated.**"[27]

Absolutely no such explicit language expanding the scope of judicial review exists in the arbitration agreement portion of the contract between Esso Chad and Taylors.  The arbitration agreement states:

---

FAA review standards apply absent clear and unambiguous contractual language to the contrary – where the "arbitration clause specifies with certain exactitude how the FAA rules are to be modified."); *Roadway Package System, Inc. v. Kayser*, 257 F.3d 287, 296 (3rd Cir. 2001) (holding that a generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default review standards).

[25]  *Gateway Tech., Inc. v. MCI Telecomm. Corp.*, 64 F.3d 993, 996 (5th Cir. 1995) (emphasis added).

[26]  *Syncor Int'l Corp. v. McCleland*, No. 99-2261, 1997 WL 452245, at *6 (4th Cir. 1997) (emphasis added).

[27]  *Fils et Cables D'Acier de Lens v. Midland Metals Corp.*, 584 F. Supp. 240, 244 (S.D.N.Y. 1984) (emphasis added).

Any controversies or claims between the parties hereto arising out of or relating to this Agreement or the breach thereof may, at the election of [Esso Chad] or [Taylors], be settled by arbitration in accordance with the commercial rules of the International Chamber of Commerce, and **judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.** In determining the substance of such controversy or claim, the arbitrator(s) shall apply the laws of the State of New York of the United States of America, except for any rule of such laws which would make the law of any other jurisdiction applicable, and shall be decided in accordance with the terms of this Agreement, taking into account the usage of the trade applicable to the transaction. The arbitration shall be held in the city of New York, State of New York of the United States of America and shall be conducted in English. Neither the existence of any controversy or claim nor the fact that arbitration is pending hereunder will relieve either party hereto of its obligations under this Agreement.[28]

No court has ever held that <u>unless</u> an arbitration agreement expressly states that judicial review is limited to a "manifest disregard" standard, judicial review <u>therefore</u> will be *de novo*, or something less than the controlling manifest disregard standard of review. Indeed, courts that have considered generic arbitration clauses like the one found in the Catering Contract have refused to displace the manifest disregard standard of review.[29]

---

[28]  *See* Catering Contract, at p. 33, ¶ 18.1, attached as **Exhibit E**.

[29]  *See Puerto Rico Telephone Co., Inc.,* 427 F.3d at 22, 31 (holding that "the mere inclusion of a generic choice-of-law clause <u>within the arbitration agreement</u> is not sufficient to require the application of state law concerning the scope of review, since there is a strong federal policy requiring limited review" and holding that such language fell "far short of the explicit language required by federal law to displace the FAA standard of review.") (emphasis added); *Action Industries, Inc.*, 358 F.3d at 341 (holding that the agreement's choice-of-law provision did not express the parties' clear intent to depart from the FAA's vacatur standard and affirming the district court's application of the FAA's vacatur standard); *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (holding that a general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for

Accordingly, the Award is subject to the being vacated <u>only</u> if Taylors can bear "the heavy burden" of proving that the Sole Arbitrator somehow manifestly disregarded the law.[30]

### B.    The Award Was Final And Definite

The Award issued by the Sole Arbitrator was final and definite under 9 U.S.C. § 10(a)(4) and the Sole Arbitrator did not exceed his powers in issuing the Award.[31]  The Sole Arbitrator has determined all damages and liability issues presented to him.[32]

---

arbitration and that such a clause simply provides for the application of the state substantive, decisional law); *see also Cohen v. S.A.C. Capital Advisors, LLC*, 2006 WL 399766, 815 N.Y.S.2d 493 (N.Y. Sup. Ct. 2006) (holding generic clause did not establish that the parties intended to displace the FAA to allow for consolidation of arbitrations) (unpublished opinion).

[30]  "A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco*, 333 F.3d at 388.

[31]  When determining whether the arbitrator exceeded his powers, the focus is on the issue submitted by the parties.  If the award disposes of that issue, correctly or not, the arbitrator will be deemed to have acted within the scope of his authority.  *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003).  Where an arbitrator acts pursuant to a broad agreement, he possesses the discretion to order any remedy deemed appropriate so long as that remedy does not exceed the powers granted by the parties' agreement.  *Id.*

[32]  *Michaels v. Mariforum Shipping, S. A.*, 624 F.2d 411, 413-414 (2d Cir. 1980) (holding that "[g]enerally, in order for a claim to be completely determined, the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages"); *see also Huntington Hosp. v. Huntington Hosp. Nurses' Ass'n*, 302 F.Supp.2d 34, 40 (E.D.N.Y. 2004)

### 1.     The Award Relating To Payment Of Taylors' Suppliers Is Final

Esso Chad established, and the Sole Arbitrator found, that Esso Chad was forced to pay millions of dollars to Taylors' suppliers due to Taylors' admitted failures to pay its suppliers. The Sole Arbitrator specifically considered and rejected the argument Taylors made at the arbitration that Esso Chad allegedly had not incurred <u>any</u> damage because the Chadian Court judgments were on appeal at the time of the arbitration proceeding.[33]

The Sole Arbitration correctly found that:

> Taylors also argues that Esso Chad's primary claim, in respect of the Chadian judgments which it has paid, should be disregarded because the Chadian court decisions are subject to appeal and there is a good chance that the appeals will succeed (Tr. P. 861). **However, it is clear that the reality is that, even if an appeal is successful, it will be almost impossible to recover the amounts paid by Esso Chad**, which have been distributed to various suppliers, at least one of which is no longer in business (Tr. Pp. 859, 860, 875).  I therefore reject this argument of Taylors.[34]

This is not a case in which Esso Chad's payment of the judgments is contingent on the outcome of the appeals Esso Chad has filed – Esso Chad <u>already</u> <u>has</u> <u>paid</u> <u>the</u> <u>judgments</u>.[35]

---

(holding that the mere fact that further litigation may be necessary to effectuate the award does not, however, render the award indefinite and lacking in finality).

[33]   Under Chadian law (derived from French law), while there is law theoretically providing the ability for a party to stay a judgment pending appeal, this law is never followed; accordingly, Esso Chad could not stay the Chadian judgments pending appeal.  *See* **Exhibit F** at pp. 857-859 (Mr. Barthelemy Cousin's testimony).

[34]   *See* **Exhibit D** (Award at ¶ 45) (emphasis added).

[35]   *See* **Exhibit G** (Witness Statement of Mr. Robert Jenkins at ¶¶ 58-63), **Exhibit H** (Witness Statement of Mr. Ronald Gregory at ¶¶ 71-73); **Exhibit I** (Witness Statement of Mr. Lindsay Perombelon at ¶¶ at 34-37); *see generally* **Exhibit J** (Witness Statement of Mr. Barthelemy

There is no evidence contradicting the Sole Arbitrator's conclusion that it will be "almost impossible" for Esso Chad to recover one penny from the suppliers to whom Esso Chad has paid millions of dollars in satisfaction of the judgments.  Simply put, this is not a case where the outcome of a pending appeal – one that Esso Chad could dismiss at any time – will *ipso facto* render nugatory the Sole Arbitrator's findings on either liability or damages.

The Sole Arbitrator was requested to determine whether Taylors' failure to pay its suppliers was a breach of contract and whether that breach caused Esso Chad damages.[36]  The Sole Arbitrator has done so within a final and definite award and has not exceeded his powers.

### 2.    The Declaration Award Is Final

The portion of the Award rendering a declaration as to Taylors' duty to indemnify Esso Chad also is final.  The Sole Arbitrator concluded that he could not award damages on this issue because, unlike the other Chadian judgments, the damages related to the indemnity claim had not actually been incurred by Esso Chad in the form of a payment to the supplier or a Chadian court judgment against Esso Chad.

---

Cousin (¶¶ 9-66, describing the Chadian court proceedings and appeals); Rebuttal Witness Statement of Mr. Barthelemy Cousin (¶¶8-10, describing the Chadian court proceedings and appeals)); *see generally* **Exhibit F** at pp. 857-875 (Mr. Barthelemy Cousin's testimony regarding the Chadian court proceedings).

[36]  **Exhibit A** (Esso Chad's Counterclaim and Answer at ¶ 102); **Exhibit D** (Award at ¶ 6, "Esso Chad alleges, and counterclaims, . . . that Taylors is in breach of the Catering Contract by failing to pay certain suppliers, leading to a loss and damages suffered by Esso Chad, including payment of the Chadian judgments . . .").

The Sole Arbitrator instead appropriately awarded a declaration that Taylors owes a contractual duty of indemnification to Esso Chad (to hold Esso Chad harmless) under the terms of the agreement as to the amounts demanded by a supplier of labor.[37]  New York law provides that a declaratory judgment has the effect of a "final" judgment.[38]  Furthermore, the Sole Arbitrator was well within his discretion in rendering the declaration.[39]  The Sole Arbitrator cited to the evidence of a "real claim" that would require indemnification, and correctly recognized that "based on the recent history of litigation by suppliers in Chad against Esso Chad in respect to Taylors' debts, may well be followed by litigation against Esso Chad by [Taylors' labor supplier]."[40]  The declaration therefore serves to (a) confirm to Taylors that it – not Esso Chad – owes the amounts demanded by Taylors' labor supplier, and (b) have the immediate and practical effect of influencing Taylors to work to pay the amounts it owes in order to avoid unnecessary, repeated litigation of the fact that Taylors owes the amounts it failed to pay.[41]

---

[37]  **Exhibit D** (Award at ¶¶ 55, ii).

[38]  *See* N.Y. CPLR 3001 ("The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed.")

[39]  *Park Avenue Clinical Hospital v. Kramer*, 26 A.D.2d 613 (4th Dept 1966), *affd* 19 N.Y.2d 958 (1967) (holding that trial court is vested with discretion to grant or deny declaratory relief).

[40]  **Exhibit D** (Award at ¶ 50).

[41]  As the New York Court of Appeals has held:

> The need for judicial intervention is obvious when, because of the actions of one of the parties, a dispute arises as to whether there has been a breach of duty or violation of the law.  Then the courts can declare the rights and obligations of the parties, and if a breach is found, compel compliance, award damages or otherwise order appropriate action to be taken.

### C.    The Damages Awarded To Esso Chad Are Appropriate

The Sole Arbitrator did not exceed his authority or ignore the law by deciding certain damages were direct damages, as opposed to consequential damages.

### 1.    The Sole Arbitrator's Award  Did Not Exceed His Authority By Awarding Damages

Taylors argued in the arbitration proceeding that Esso Chad could not recover consequential damages because the Catering Contract prohibited the recovery of such damages. The Sole Arbitrator did <u>not</u> award consequential damages – **he awarded Esso Chad its direct damages** flowing from Taylors' failure to provide its "promised performance."[42]

---

That is the traditional, but not the only way in which a genuine legal dispute may arise or be resolved by the courts.  For instance, when a party contemplates taking certain action a genuine dispute may arise before any breach or violation has occurred and before there is any need or right to resort to coercive measures.  In such a case all that may be required to insure compliance with the law is for the courts to declare the rights and obligations of the parties so that they may act accordingly.  That is the theory of the declaratory judgment action authorized by CPLR 3001.

Whether a judicial determination of this nature will have this effect is generally for the court to decide in the exercise of sound discretion (CPLR 3001).  There are however certain basic principles.  The fact that the court may be required to determine the rights of the parties upon the happening of a future event does not mean that the declaratory judgment will be merely advisory.  In the typical case where the future event is an act contemplated by one of the parties, it is assumed that the parties will act in accordance with the law and thus the court's determination will have the immediate and practical effect of influencing their conduct.

*New York Public Interest Research Group, Inc. v. Carey*, 42 N.Y.2d 527, 530-531 (N.Y. 1977).

[42]  *See* **Exhibit D** (Award at ¶ 42, "In my view, Esso Chad, in claiming damages [for breach of Taylors' failure to pay its suppliers], is claiming compensation for Taylors' 'promised performance' under Section 10.4, namely, payment of suppliers.  I therefore reject Taylors' argument that these damages are consequential damages. . .").

Thus, the Sole Arbitrator could not have exceeded his authority under 9 U.S.C. § 10(a)(4) by awarding damages that the Catering Contract expressly allowed to be recovered.

### 2.     The Sole Arbitrator Did Not Manifestly Disregard New York Law

In awarding damages, the Sole Arbitrator made a determination that courts applying New York law have found to be difficult – that the damages awarded were direct, not consequential.[43] Indeed, this issue has challenged New York courts for over a century.[44]  Accordingly, the Sole Arbitrator could not have manifestly disregarded New York law with his determination.  As the Second Circuit has held:  "[a]s long as there is more than one reasonable interpretation of the governing law, the law is not well-defined, explicit, and clearly applicable, and an arbitrator cannot be said to have manifestly disregarded the law in rejecting either party's interpretation."[45]

---

[43]  *See e.g., Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 2006 WL 147586, *2 (S.D.N.Y. Jan. 20, 2006) (holding that "[a]lthough the distinction between general and special contract damages is well defined, 'its application to specific contracts and controversies is usually more elusive.'") (Baer, J.), quoting *American List Corp. v. U.S. News & World Report, Inc.*, 75 N.Y.2d 38, 42 (1989).

[44]  *Walrath v. Redfield*, 11 Barb. 368 (N.Y.Sup. 1851) ("The difficulty is in applying the rule to cases as they arise in practice; there being no well defined and easily recognized boundary line between damages which are natural, necessary, direct and proximate, and those which are remote and contingent.  Many of the cases to be found in the books are border cases, and courts have not always been uniform in the decision of cases apparently within the same principle.")

[45]  *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 71 (2d Cir. 2003).

It was certainly reasonable for the Sole Arbitrator to conclude that Esso Chad's damages were direct and not consequential. The Sole Arbitrator cited and relied upon the Second Circuit decision in *Schonfeld v. Hillard* which held that a plaintiff in a breach of contract case asserts "direct" damages when he seeks to recover "the value of the very performance promised." 218 F.3d 164 (2d Cir. 2000).[46] Thus, the Sole Arbitrator's reasoned application of New York law to the evidence in no way constitutes a "manifest disregard" of New York law in this area.[47]

---

[46] *See* **Exhibit D** (Award at ¶ 42, "In my view, Esso Chad, in claiming damages [for breach of Taylors' failure to pay its suppliers], is claiming compensation for Taylors' 'promised performance' under Section 10.4, namely, payment of suppliers. I therefore reject Taylors' argument that these damages are consequential damages. . . ").

[47] The Sole Arbitrators award of Esso Chad's attorneys' fees related to its defense of the litigation initiated by Taylors' suppliers in no way manifestly disregarded New York law. *See Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 309 (2d Cir. 1987) (affirming award of attorneys' fees as "compensatory damages" to non-breaching party arising from litigation involving third party because the "fees were a direct and foreseeable consequence" of the breach); *Jamaica Commodity Trading Co. Ltd. v. Connell Rice & Sugar Co., Inc.*, 766 F.Supp. 138, 157-158 (S.D.N.Y. 1991) (holding that breach directly caused arbitration action between non-breaching party and third-party and non-breaching party was entitled to its attorney's fees and other expenses that it incurred as a result of defending the arbitration action brought by third-party against non-breaching party).

### 3. The Sole Arbitrator Did Not Manifestly Disregard the Law in Making Factual Findings as to Certain Provisions of the Catering Contract

The Award also is not subject to vacatur or rejection on the basis of Taylors' contractual interpretation arguments made during the arbitration. Initially, the Sole Arbitrator's factual findings and contractual interpretation are not subject to judicial challenge.[48] Furthermore, the Sole Arbitrator expressly considered and correctly rejected Taylors' erroneous arguments.

### a. Section 13.7 Does Not Apply

Taylors argued that Section 13.7 should be read in a manner that would have Esso Chad's damages arising from the termination of the Catering Contract, as opposed to Taylors' admitted failure to pay its suppliers.[49] The Sole Arbitrator rejected Taylors' argument, holding as follows:

> Taylors also relies on Section 13.7 of the Catering Contract. Taylors alleges that the damages sought by Esso Chad are damages for, or on account of, or arising from the termination of the Catering Contract pursuant to Section 13.4 of the same. **This is simply not the case.** The damages in respect of Taylors' failure to pay the suppliers arise out of the events that existed prior to the termination of the Catering Contract, and do not arise "for, or on account of, or arising from" the termination. I therefore reject Taylors' argument based on Section 13.7.[50]

---

[48] *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 214 (2d Cir. 2002) (holding that "[t]he arbitrator's factual findings and contractual interpretation are not subject to judicial challenge.")

[49] *See* **Exhibit K** (Taylors' Pre-Hearing Memorial at pp. 15-22), **Exhibit L** (Taylors' Post Hearing Memorial at pp. 9-18), and **Exhibit M** (Taylors' Reply to Esso Chad's Post Hearing Memorial at pp. 18-21, 24-27, and 44-46).

[50] **Exhibit D** (Award at ¶ 43) (emphasis added).

### b.     Section 5.4 Does Not Apply

The Sole Arbitrator also did not exceed his powers or manifestly disregard the law by not applying Section 5.4 of the Catering Contract.  For example, in regards to the Chadian judgments, Taylors argued that the Chadian judgments somehow were not derivative of Taylors' promised performance (and, therefore, barred from being recovered by virtue of Section 5.4), because Taylors owed no duty to Esso Chad to pay its suppliers.[51]  The Sole Arbitrator, after acknowledging that Taylors' senior executive admitted repeatedly that Taylors did have a duty to Esso Chad to pay its suppliers,[52] correctly saw this argument as baseless, finding that:

> In my view, Esso Chad, in claiming damages for breach of Section 10.4(a) of the Catering Contract, is claiming compensation for Taylors' "promised performance" under Section 10.4, namely, payment of the suppliers.  I therefore reject Taylors' arguments that these damages are consequential damages and thus excluded by Section 5.4.[53]

The Sole Arbitrator's damage award does not constitute a manifest disregard of the law.

### D.     The Sole Arbitrator Did Not Manifestly Disregard New York Law In Denying Taylors' Conversion Claim

The Sole Arbitrator did not ignore New York conversion law.  The first requirement within a conversion claim is that the "conversion" must be unauthorized.[54]

---

[51]  *See* **Exhibit K** (Taylors' Pre-Hearing Memorial at pp. 15-22), **Exhibit L** (Taylors' Post Hearing Memorial at pp. 9-18), and **Exhibit M** (Taylors' Reply to Esso Chad's Post Hearing Memorial at pp. 18-21, 24-27, and 44-46).

[52]  **Exhibit D** (Award at ¶ 39).

[53]  **Exhibit D** (Award at ¶¶ 40, 42).

[54]  *See Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*, 637 N.Y.S.2d 342, 347 (N.Y. 1995) ("Conversion is 'the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'").

The Sole Arbitrator embraced this central requirement and specifically found that Taylors <u>authorized</u> the use of its assets.[55]   Taylors cannot attack this critical factual finding that undermined Taylors' conversion claim.[56]   Moreover, there is no evidence of manifest disregard. Through the copious amounts of briefing, the parties put forth their arguments related to Taylors' conversion claim.[57]   As indicated in the Award, the arbitrator considered these and denied Taylors' conversion claim.[58]   Any argument that the Sole Arbitrator erroneously interpreted New York conversion law and/or the concept of equitable estoppel – which he did not – will not satisfy the manifest disregard standard because it requires more than just "an erroneous interpretation of the law."[59]

---

[55]   *See* **Exhibit D** (Award at ¶ 32).

[56]   A court is not empowered to second-guess the arbitrator's fact-finding or assessment of credibility.   *See International Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 706, 725-26 (2d Cir. 1998) (holding that arbitrator's fact-finding cannot be reviewed *de novo* by district court).

[57]   *See* **Exhibit B** (Declaration of Mr. Reagan M. Brown).

[58]   *See* **Exhibit D** (Award at ¶¶ 29-32).

[59]   The manifest disregard standard is not an inquiry into the correctness of the decision; the "erroneous application of rules of law is not a ground for vacating an arbitrator's award, nor is the fact that an arbitrator erroneously decided the facts."   *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892-93 (2d Cir. 1985) (citations omitted).

## V.     Prayer For Relief

For the above reasons, Esso Chad prays for the following relief:

1.     That the Court confirm the Award rendered in ICC Case No 13 491/JNK/EBS in all respects;

2.     That the Court enter judgment, in conformance with the Award rendered in ICC Case No 13 491/JNK/EBS, as follows:

     a.     Taylors International Services Ltd. shall pay to Esso Exploration and Production Chad, Inc. the amount of $3,113,884.46, together with interest at the rate of 9% per annum from January 1, 2005, until payment;

     b.     Taylors International Services Ltd. shall indemnify Esso Exploration and Production Chad, Inc. in respect of any sums which Esso Exploration and Production Chad, Inc. is obliged to pay to Senev-Tchad, pursuant to the order of a competent court, in respect of payments which Taylors International Services Ltd. is obliged to make under Section 6.1 of Exhibit A of the Catering and General Camp Services contract entered between Taylors International Services Ltd. and Esso Exploration and Production Chad, Inc.;

     c.     Taylors International Services Ltd. shall pay to Esso Exploration and Production Chad, Inc. the amount of $590,588.31 in respect of attorneys' fees and costs, together with interest at the rate of 9% per annum on any amount unpaid from May 1, 2006, until payment;

     d.     Taylors International Services Ltd. shall pay to Esso Exploration and Production Chad, Inc. the amount of $32,500.00 in respect of the arbitrator's fees and expenses, and the ICC's administrative expenses, together with interest at the rate of 9% per annum on any amount unpaid from May 1, 2006, until payment; and,

     e.     Save as aforesaid, the claims between Taylors International Services Ltd. and Esso Exploration and Production Chad, Inc. are denied; and,

3.     That such other and further relief be awarded to Esso Chad as this Court deems just and proper.

Dated: New York, New York
       August 4, 2006

Respectfully submitted,


By:  /s/ Mark A. Robertson _____
    Mark A. Robertson (MR8906)
Fulbright & Jaworski L.L.P.
666 Fifth Avenue
New York, New York  10103-3198
Telephone:  212.318.3000
Facsimile:  212.318.3400


Reagan M. Brown (*pro hac vice pending*)
David J. Levy (*pro hac vice pending*)
Charles Jason Rother (*pro hac vice pending*)
Fulbright & Jaworski L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  713.651.5151
Facsimile:  713.651.5246