UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ESSO EXPLORATION AND PRODUCTION :
CHAD, INC. :
:
Plaintiff, :   06 CV 4401 (RMB)
:
-against- :   **DECISION & ORDER**
:
TAYLORS INTERNATIONAL SERVICES, :
LTD., :
:
Defendant. :
------------------------------------------------------------x

**I.    Background**

On October 1, 2001, Esso Exploration and Production Chad, Inc. ("Esso Chad" or "Plaintiff") entered into a written agreement (the "Catering Contract") with Taylors International Services, Ltd. ("Taylors" or "Defendant") "to provide catering and general camp services in connection with the development of oilfields in southern Chad." (Declaration of Teresa Rosen Peacocke, dated August 11, 2006 ("Rosen Peacocke Decl."), ¶ 3.) On December 19, 2003, "Esso Chad terminated the Catering Contract." (Rosen Peacocke Decl. ¶ 4.) "Taylors filed a Request for Arbitration to the ICC International Court of Arbitration on or about September 23, 2004." (Rosen Peacocke Decl. ¶ 95.)

On or about March 23, 2006, the ICC International Court of Arbitration issued a Final Award (the "Award") holding that Taylors is liable to Esso Chad because of, inter alia, "breach of Taylors' obligations under the Catering Contract," and that "Esso Chad is entitled to recover from Taylors the amount of $3,113,884.46" and also granting "to Esso Chad a declaration that Taylors is to indemnify it in respect of any sums which Esso Chad is obliged to pay [in connection with the termination] . . . pursuant to the order of a competent court." (Final Award

1

Before the ICC International Court of Arbitration, dated March 23, 2006, ("Award") ¶¶ 40, 55, 57.)

On or about August 4, 2006, Plaintiff moved to confirm the Award, arguing that "[t]he Award in this matter resulted from a reasoned decision by an unbiased Sole Arbitrator who analyzed lengthy evidentiary submissions, hearings, pre-hearing and post-hearing briefs and then rendered a final award consistent with the evidence and the applicable law." (Plaintiff's Notice of Motion to Confirm Arbitral Award, dated August 4, 2006; Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Confirm Arbitral Award, dated August 4, 2006 ("Pl. Mem."), at 5 ("The Sole Arbitrator did not exceed his authority or manifestly disregard the law. The Award was a final and definite award.").)

On or about August 11, 2006, Defendant filed an opposition and moved to vacate the Award, arguing that: (A) "[b]ecause further adjudication is required to resolve both the Chadian Judgments and the claims asserted . . . against Esso Chad, the Award may not be confirmed at this time, and must be vacated pending the entry of a more final award" and "[t]he portion of the award providing a declaratory judgment with respect to any future judgment . . . is not final and definite;" and (B) "[t]his Court should vacate the Award on the ground that the Arbitrator exceeded his authority by failing to apply New York law and adhere to the terms of the Catering Contract, as the Arbitration Clause specifically required him to do." (Defendant's Memorandum of Law in Opposition to Motion to Confirm Arbitration Award and in Support of Cross-Motion to Vacate, dated August 11, 2006 ("Def. Mem."), at 5, 6, 8.)

On or about August 18, 2006, Plaintiff filed a reply, arguing that: (A) "[b]ecause the Sole Arbitrator determined all damages and liability issues presented to him, the Award is deemed to be 'final' under the controlling law [and] [t]he declaratory portion of the award is also final

3

[because] [t]he Sole Arbitrator was within his authority to render a declaration;" and (B) "[t]he Sole Arbitrator has not manifestly disregarded the law as to any determination of the categories of damages." (Plaintiff's Memorandum of Law in Reply to Defendant's Memorandum of Law in Opposition to Motion to Confirm Arbitration Award and in Opposition to Cross-Motion to Vacate, dated August 18, 2006 ("Pl. Reply"), at 3, 9.)

**For the reasons set forth below, Plaintiff's motion to confirm the Award is granted. Defendant's cross-motion to vacate the Award is denied.**

## II.   Legal Standard

"[C]ourts once possessed a hostility towards arbitration agreements. Congress passed the [Federal Arbitration Act] to tame that antipathy. Now, it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (internal citations and quotation marks omitted).

"Arbitration awards are reviewed for 'manifest disregard of the law.' This review is severely limited. To vacate an arbitration award, a reviewing court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it all together, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case. . . . The arbitration decision must be confirmed if there is any basis for upholding the decision and if there is even a barely colorable justification for the outcome reached." Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc., 409 F.3d 87, 90-91 (2d Cir. 2005) (internal citations, brackets and quotation marks omitted).

4

## III. Analysis

Preliminarily, Defendant argues (unpersuasively) that the Court should "review the arbitration award at issue under a de novo standard of review . . . [because] the Catering Contract contains an arbitration provision that expressly required the arbitrator . . . to 'apply the laws of the State of New York.'" (Def. Mem. at 3, 9-12 ("[S]ince the parties specifically agreed that the Arbitrator was to apply New York law and interpret the contract according to its terms, to interpret this phrase short of de novo review would render the language meaningless and would frustrate the mutual intent of the parties.").) Plaintiff argues (correctly) that "there is no evidence of any intent by the parties to . . . displace the manifest disregard standard of review." (Pl. Reply at 6); see Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc., 401 F.3d 701, 710-12 (6th Cir. 2005); see also Puerto Rico Tel. Co., Inc. v. U.S. Phone Mfg. Corp., 427 F.3d 21, 29-30 (1st Cir. 2005) (collecting cases); InterDigital Communications Corp. v. Nokia Corp., 407 F. Supp. 2d 522, 529 (S.D.N.Y. 2005) ("Contrary to Nokia's assertions, the Master Agreement's substantive choice of law provision does not require that the law of New York respecting challenges to arbitration awards should be applied here."); I Appel Corp. v. Katz, No. 02 Civ. 8879, 2005 WL 2995387 at *10 n.8 (S.D.N.Y. Nov. 9, 2005) (same).

### (A) Final Award

Defendant argues that the Award "is neither final nor definite" because it "'is based on two decisions of the Court of N'Djamena in Chad, both of which Esso Chad has appealed,'" and because "[t]he portion of the Award providing a declaration with respect to any future judgment . . . does not meet the degree of finality required by the FAA and may not be confirmed pending the adjudication of the [future] claim." (Def. Mem. at 5 ("[T]he litigation process is Chad is not yet complete and the exact amount that Esso Chad ultimately will have pay, on a net basis, to

various subcontractors is still unknown. This, in turn, makes it impossible for this Court to enter a definite, final judgment."), 6-7 ("It is simply impossible for this Court, at this time, to turn [the declaratory] portion of the Award into a legally enforceable judgment against Taylors.").) Plaintiff counters that it is not required "to exhaust all appeals and all collection efforts in litigation involving third parties" before the Court can affirm the Award, and that "[t]he Sole Arbitrator was within his authority to render a declaration." (Pl. Reply at 2, 3.)

"[A]n arbitration award, to be final, must resolve all the issues submitted to arbitration, and . . . must resolve them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 157 F.3d 174, 176 (2d Cir. 1998). Under this definition, the Award is final. The Arbitrator decided both liability and damages on the issues presented as of the date the Award was issued. See id.; see also Doctor's Assocs., Inc. v. Kwan Chien Hu, No. 300 Civ. 544, 2003 WL 22290304, at *2 (D. Conn. July 22, 2003) ("In order for an arbitration award to be 'final,' it must be intended by the arbitrators to be a complete determination of all claims submitted, and generally, the arbitrators must have decided both the issue of liability and the issue of damages."); Blue Sympathy Shipping Co. Ltd. v. Seriocean Int'l, No. 94 Civ. 2323, 1994 WL 597144, at *1 (S.D.N.Y. July 6, 1994) ("The mere fact that the Award permitted the security required thereunder to be increased, if necessary, at some later date in no way detracts from the finality of the Award as issued on March 5, 1994."). And, that a portion of the Award provides declaratory judgment does not render it indefinite; "[t]he mere fact . . . that further litigation may be necessary to effectuate the award does not . . . render the award indefinite and lacking in finality." See Huntington Hosp. v. Huntington Hosp. Nurses' Ass'n, 302 F. Supp. 2d 34, 42 (E.D.N.Y. 2004); see also The Shaw Group, Inc. v. Triplefine Int'l

5

indefinite.").

arbitrator has issued declaratory relief, which establishes a precise, fixed percentage of each payment to be received in the future. While the arbitrator does allow for an adjustment of the payments after completion of the Lungmen project, the Court does not find such a provision

Corp., No. 01 Civ. 4273, 2003 WL 22077332, at *4 (S.D.N.Y. Sept. 8, 2003) ("Here the

### (B)  No Manifest Disregard of the Law

Defendant argues that "the Arbitrator ignored New York law entirely in analyzing the consequential damages and the conversion claims; his rulings were the exact opposite of the New York law required." (Def. Mem. at 8-9, 15, 20 ("[T]he Arbitrator's award of consequential damages to Esso Chad for expenses relating to the Chadian Judgments was such an obvious violation of basic New York legal principles as to constitute 'manifest disregard of the law.'"), 21 ("[D]espite being presented with the basic principles of New York law on conversion, the Arbitrator denied Taylors' conversion claim. . . . [T]he Arbitrator disregarded basic principles of New York law, and thereby exceeded his authority under the Agreement.").  Plaintiff counters that "[i]t was certainly reasonable for the Sole Arbitrator to conclude the Esso Chad's damages were direct and not consequential." (Pl. Mem. at 16 ("[T]he Sole Arbitrator's reasoned application of New York law to the evidence in no way constitutes a 'manifest disregard' of New York law in this area."), and that "[t]he Sole Arbitrator did not ignore New York conversion law." (Pl. Mem. at 18.)

"'An arbitrator's decision is entitled to substantial deference, and the arbitrator need only explicate his reasoning under the contract in terms that offer even a barely colorable justification for the outcome reached in order to withstand judicial scrutiny." Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997) (internal quotation marks omitted).

Here, the Arbitrator specifically cited the applicable rule for "[c]onsequential damages under New York law," and, after considering the facts of the case, "reject[ed] Taylors' argument that these damages are consequential damages." (Award ¶¶ 42-43 ("Consequential damages, under New York law, are damages which seek to compensate a plaintiff for additional losses (other than the promised performance) that are incurred as a result of the defendant's breach. In my view, Esso Chad, in claiming damages for breach . . . is claiming compensation for Taylors' promised performance . . ., namely, payment of the suppliers. I therefore reject Taylors' argument that these damages are consequential damages and are thus excluded."), 46.) "'Because the arbitrator explained his conclusions in terms that offer a 'colorable justification for the outcome reached,' our inquiry should end." See Abram Landau Real Estate v. Bevona, 123 F.3d 69, 75 (2d Cir. 1997); In re Arbitration between Promotora de Navegacion, S.A. and Sea Containers, Ltd., 131 F. Supp. 2d 412, 425 (S.D.N.Y. 2000) ("[T]he Panel engaged in an appropriate professional review and analysis of the factual and legal merits of this case (as reflected in the record) and did not act in manifest disregard of the law in reaching its conclusions as to the award of consequential damages. The Strider Subsidiaries' motion to vacate that portion of the Award is denied.").

The Arbitrator also specifically cited the applicable rule for conversion under New York law, and held that "two of the elements of the tort of conversion . . . are lacking." (Award ¶¶ 30, 32 ("[T]he evidence . . . demonstrates that Taylors was at all relevant times aware of the transfer of . . . assets . . . and thereby authorized the same. Further, there is no evidence of a demand by Taylors and refusal by Esso Chad.").) Again, "the arbitrator explained his conclusions in terms that [at least] offer a 'colorable justification for the outcome reached.'" See Abram Landau, 123 F.3d at 75.

7

## IV. Conclusion

For the reasons set forth above, Plaintiff's motion to confirm the Award is granted.

Defendant's cross-motion to vacate the Award is denied.

Dated: New York, New York
November 14, 2006

RMB

**RICHARD M. BERMAN, U.S.D.J.**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 11/14/06