UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

| | | |
|---|---|---|
| ESSO EXPLORATION AND PRODUCTION CHAD, INC., | : | 06 CV 4401 (RMB) |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | **DECLARATION OF** |
| | : | **JAMES TOYNTON** |
| TAYLORS INTERNATIONAL SERVICES LTD., | : | |
| | : | |
| Defendant. | : | |
| | : | |

----------------------------------------------------------------x

I, James Toynton, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1.       I am a director of Chandlers Corporate Recovery Limited, which has its offices in St Martin, Guernsey, a Fellow of the Association of Chartered Certified Accountant, and am a United Kingdom Licensed Insolvency Practitioner (licensed by the Association of Chartered Certified Accountants).  I have been appointed liquidator ("Liquidator") for defendant Taylors International Services, Ltd. ("Taylors") in a liquidation proceeding in the Court of Alderney (the "Liquidation Proceeding").  I make this Declaration on the basis of personal knowledge except where otherwise noted.

2.       I submit this Declaration in opposition to the motion of Esso Exploration and Production Chad, Inc. ("Esso Chad") to compel Taylors to produce documents and to hold Taylors in contempt.  I am fully familiar with the facts set forth herein.

**The Liquidation Proceeding**

3.      On or about December 15, 2006, one of Taylors' creditors, Truebell

Marketing and Trading LLC ("Truebell"), made an application to the Court of Alderny

for an order pursuant to Section 129 of The Companies (Alderney) Law (1994) that

Taylors be wound up, and an order pursuant to Section 130 that Anthony Pickford and I

be appointed as joint liquidators of Taylors, and that either one of us be permitted to

exercise the full powers of the liquidator.

4.      On April 18, 2007, the Court of Alderney issued an order that 1) Taylors

be wound up, 2) Anthony Pickford and I be appointed as joint liquidators of Taylors and

that the powers of the liquidators could be exercised by either one of us, 3) the liquidators

be sworn in at a later date and 4) costs follow the event.  A copy of the Court of

Alderney's April 18, 2007 Order (the "Liquidation Order") is attached hereto as

Exhibit A.

5.      I was sworn in as liquidator for Taylors in the Liquidation Proceeding on

May 3, 2007. Anthony Pickford has at present declined to take up his position in the

interest of costs (flight schedules from Guernsey to Alderney require at least half a day

for court attendance, and this is required at least on appointment and at any final court

meetings).

6.      Since that time, I have had the authority and responsibility for decision

making with regard to the management and disposition of the estate of Taylors.  I am the

only person authorized to act on behalf of Taylors and am the sole person responsible for

reviewing Taylors' records, consulting with management to ascertain whether assets

exist, obtaining and marshaling those assets, dealing with creditors' concerns and

questions, and ensuring that all creditors are treated equally in the liquidation process.

**Esso Chad's Discovery Requests and Contempt Motion**

7.    Esso Chad was informed of the Liquidation Order on April 26, 2007 (*see*

Minkoff Decl. Ex. D). Nevertheless, five days later, on May 1, 2007, Esso Chad wrote to

Judge Berman and sought permission to make a motion to compel Taylors to respond to

the two outstanding discovery requests. *See* Minkoff Decl. Ex. E. This letter did not

even mention the Liquidation Order or my appointment as Liquidator. Esso Chad wrote

a separate letter to Taylors' former management, making the same requests. *Id.* Ex. F.

8.    However, neither of these letters was sent to me. In the letter to former

management, Esso Chad did cite the Liquidation Order, but took the position "that the

liquidation proceedings in Alderney do not in any way relieve Taylors of its obligations

to respond to Esso Chad's discovery." *See* Minkoff Decl. Ex. F at 3.

9.    In early May 2007, just after my appointment as Liquidator was

confirmed, I had an informal telephone discussion with Esso Chad's attorneys and

informed them that I would not oppose Esso Chad's discovery requests, as I had no funds

to instruct lawyers. However, I did state that I would be asking Taylors for the same

information that Esso Chad was requesting from Taylors, and I welcomed Esso Chad's

offer to provide information that they had obtained as it could assist in our mutual goal of

identifying potential assets or actions for the company. I also informed Esso Chad that I

would report in due course to all of the creditors and the Court of Alderney.

10.    It was not my intention to release information to Esso Chad until the

appeal was resolved (since a successful appeal might result in Esso Chad not being a

creditor). I do not believe the letter to the Court from Esso Chad's counsel dated May 11, 2007 provides a completely accurate account of the conversation I had with Esso Chad's counsel. Whilst welcoming any information they could provide, I did not endorse discovery of Taylors' management outside the parameters of the Liquidation Proceeding.

11.     On May 29, 2007, while I was away from the offices, I asked Mr. Pickford to inform the Court that I needed at least four weeks to gather information from Taylors' former management, and asked to postpone my response to the discovery requests until July 31, 2007. *See* Minkoff Decl. Ex. J. I needed time to gather the documents, which I understood were located in both the United Kingdom and Saudi Arabia, to consult with Taylors former management, and compile a report for Taylors' creditors. However, two days later, Esso Chad informed the Court that it wanted immediate relief. *Id*. Ex. K.

12.     In its letter to the Court, Esso Chad either showed little regard for the Liquidation Proceeding, or a fundamental misunderstanding of my position and duties as Liquidator:

> Taylors' disregard for the Federal Rules of Civil Procedure, and this Court's previous Order, cannot be allowed to continue. In effect, Taylors wants this Court and Esso Chad to wait for the liquidators to attempt to collect from Taylors the very information/documents that Esso Chad appropriately requested from Taylors months ago (and this Court ordered to be produced), so that the liquidators may then pass it along to Esso Chad. Again, Taylors cannot stand behind the liquidation proceeding as some type of shield against providing full and accurate responses to the valid post-judgment discovery that is exceedingly overdue and has been ordered by this Court to be produced."

*Id*. at 2 (emphasis added).

13.     Esso Chad incorrectly assumed that the former management of Taylors could somehow act separately from me. This is simply incorrect. Once I was appointed

Liquidator, Taylors' former management lost the ability to act on behalf of the company and in fact that only person who was authorized to deal with Esso Chad on Taylors' behalf was me.

14.    Esso Chad also erroneously concluded that the Liquidation Proceeding, which is supposed to protect Taylors and the other creditors from unilateral enforcement actions, did not bar Esso Chad from doing whatever it wanted to collect its judgment.

15.    As there were no funds in Taylors' liquidation estate, I attempted for two months to avoid retaining an attorney in New York, hoping that I would be able to work this out with Esso Chad and save the estate's resources as well as my own time and effort.

**Esso Chad's Motion to Compel**

16.    At the end of May, this Court ordered Esso Chad to file a formal motion to compel if it wanted the relief it sought. *See* Minkoff Decl. Ex. L. Esso Chad made this motion four days later. Through Jeremy Wessels, an Alderney attorney I retained to advise me in connection with the Liquidation Proceeding, I responded by letter to the Court, making clear that I did not have personal knowledge of the information Esso Chad had requested, that I did not have the resources to obtain that information, and that Esso Chad should provide the resources needed to complete the investigation, as the Alderney court would not expect me to comply without financial resources. *See* Wessels Decl. Ex. A. Moreover, Mr. Wessels' letter emphasized that Esso Chad was acting improperly by conducting its own discovery, and that it should be compelled to cooperate with the Liquidation Proceeding.

17.    Mr. Wessels explained:

*Under Alderney law, execution proceedings against a company in
liquidation would normally be <u>stayed</u> so that such issues could be dealt
with within the liquidation itself.  There is no public funding of
liquidations in Alderney so the Court would expect the Company's
creditors (being the only parties financially interested in the outcome of
the liquidation) to supply the resources necessary to enable the Liquidator
to realize the Company's assets, failing which the Court would order the
Company be dissolved without the payment of any dividend.*  This is what
will have to happen shortly in this case if none of the Company's creditors
assist the liquidator by supplying him with the funding needed to liquidate
the company."

*Id.* at 2 (underlined emphasis in original, italicized emphasis added).

18.     Mr. Wessels concluded by asking the Court to recognize my status as

Liquidator "both in law and also as a matter of practicality," and called on Esso Chad "to

cooperate with and fund the Liquidator to equip him to make all necessary inquiries about

the assets of the Company, not expect the Liquidator to produce information and

documents that he mainly does not have. . . ." *Id.*

19.     Again, at my direction, Mr. Wessels emphasized that as Liquidator, I had

to control the flow of information between Taylors and the creditors, and that I could act

only within the context of the Liquidation Proceeding.

20.     When Esso Chad made its motion to compel Taylors to produce

documents and to hold Taylors in contempt, Frankfurt Kurnit Klein & Selz, P.C.

("FKKS") was not counsel for the Company, as the law firm had only been retained to

represent Taylors through its appeal in the Second Circuit.

21.     During the week commencing 10 July 2007, a creditor agreed to provide

funding to enable me to be represented properly on this issue, and I have now been able

to instruct FKKS in this matter.  My decision to instruct is based on advice received and

on my belief that the interests of the company, its creditors, and members are best served

by my ability to retain control under the Alderney insolvency procedures.

**Documents and Information Collected From Taylors**

22.    In the context of the Liquidation Proceeding, I requested information and documents from Taylors' former management to ascertain whether there are any assets of the company.  By about July 2, 2007, the former management of Taylors had supplied me with all of the information and documents I had requested, although I now need to seek clarification and detail on a number of issues.  Under Alderney law, I am the only person to whom the former management must provide that information.

23.    I have now had the opportunity to inspect some of Taylors' books and records.  I am aware that Taylors has three creditors, all of whom are owed substantial amounts of money.  Only one of these creditors, Esso Chad, is based in the United States.

24.    I am now formulating some follow-up questions for Taylors former management before reporting to the creditors in early August 2007.

25.    Once I have collected the relevant information, I will prepare an interim report that will be distributed to all of the creditors of Taylors, including Esso Chad.

26.    Esso Chad's discovery demands which, whilst aimed at Taylors' former management, who no longer have the authority to act for the company, have necessitated a considerable amount of time on my part, and the instruction of lawyers to act for me and Taylors both in Alderney and the United States, in order that I can protect properly the interests of the Taylors and its creditors, and not allow Esso Chad to usurp my role as court-appointed Liquidator, and circumvent the Liquidation Proceeding.

27.    Esso Chad should be ordered to submit to the Liquidation Proceeding pending in the Court of Alderney, rather than try to circumvent that proceeding with its

own, separate discovery demands.  If it is dissatisfied with my investigation, Esso Chad

may go to the Court of Alderney and ask that I be replaced.

28.    Until such time, I should be allowed to continue to perform this task for

the benefit of all the creditors, so that an orderly wind-up of Taylors' affairs may take

place.

**My Efforts to Resolve This Dispute**

29.    As the letters cited above indicate, I made numerous attempts on my own

to resolve this with Esso Chad's counsel.  When those efforts failed, and the deadline for

responding to the contempt motion loomed, I retained Ronald Minkoff of FKKS to assist

me in responding to that motion, as I was concerned that it was not in the best interests of

Taylors or its creditors to allow a motion for contempt of court to go un-opposed in the

context of its disregard for the Alderney Liquidation Proceeding, the proposals we had

made to Esso and to the court.

30.    My investigation so far has uncovered no readily available assets

belonging to Taylors.

31.    At my instruction, Mr. Minkoff informed Esso Chad that I am prepared in

short order to submit a report to the creditors based on my inspection of Taylors' records

and information provided to me by the ormer management.  I also am prepared to

conduct a formal interview of Taylors' former management, using (at my discretion)

questions prepared by Esso Chad (creditors have no automatic right to a transcript of such

an interview).  However, I have no funds to conduct this interview or research, and I

advised that unless Esso Chad, as a party with a financial interest in the outcome, provide

some funding for this phase of my investigation, I would be unable to proceed. Esso Chad refused, and insisted on pursuing its contempt motion.

32.    Esso Chad's approach is distracting me from doing my investigation and has drained resources being provided to the Liquidator by creditors, and continues to reduce the benefit to creditors should any assets be recovered. It should be ordered to stop its post-judgment discovery efforts and submit to the Alderney Liquidation Proceeding.

IN WITNESS WHEREOF, I have executed this statement under penalty of perjury under the laws of the United States of America this 16th day of July 2007.

_____
James Robert Toynton
as *Liquidator for Taylors International Services, Ltd (in compulsory liquidation) appointed by the Court of Alderney*

# EXHIBIT A



# *In the Court of Alderney*

**IN THE MATTER OF** Truebell Marketing and Trading LLC (Applicant) —v— Taylors International Services Limited (Company). Claim by the Applicant for:

a)   An Order pursuant to section 129 of The Companies (Aldeney) Law, 1994 that the Company be wound up;

b)   An Order pursuant to section 130 that Anthony Pickford and James Toynton be appointed as joint liquidators of the Company and that the powers of the liquidators may be exercised by one of them;

c)   Such further orders as are appropriate;

d)   Costs.

Advocate Edwards appeared for the Applicant. The Company did not appear. The Court heard submissions from Advocate Edwards and considered the documents produced.

### *In pursuance of the order of the COURT pronounced according to Law and recorded by the COURT,*

### *This Act is hereby inscribed as follows:*

**The Court ordered that the Company be wound up, that Anthony Pickford and James Toynton be appointed joint liquidators of the Company and that the powers of the liquidators may be exercised by one of them, that the liquidators be sworn in at a later date and that costs follow the event.**

### *This 18th day of April 2007*

*Greffier*